Alan Gura, Calif. Bar No. 178,221
Gura & Possessky, PLLC
105 Oronoco Street, Suite 305
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665
alan@gurapossessky.com

Allen Dickerson*
Center for Competitive Politics
124 S. West Street, Suite 201
Alexandria, VA 22314
703.894.6800/Fax 703.894.6811
adickerson@campaignfreedom.org
*Admitted *pro hac vice*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR COMPETITIVE POLITICS,<br><br>Plaintiff,<br><br>v.<br><br>KAMALA D. HARRIS, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,<br><br>Defendant. | 2:14-CV-00636-MCE-DAD<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: April 17, 2014<br>Time: 2 p.m.<br>Courtroom: 7, 14th Floor<br>Judge: Hon. Morrison C. England, Jr.<br>Trial Date: None Set<br>Action Filed: March 7, 2014 |

Come now Plaintiff Center for Competitive Politics, by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Reply to Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction.

Dated this 10th day of April, 2014.

Respectfully Submitted,

/s/ Alan Gura
Alan Gura, Calif. Bar No. 178,221
Gura & Possesky, PLLC
105 Oronoco Street, Suite 305
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665
alan@gurapossessky.com

/s/ Allen Dickerson
Allen Dickerson*
Center for Competitive Politics
124 S. West St., Suite 201
Alexandria, VA 22314
703.894.6800/Fax 703.894.6811
adickerson@campaignfreedom.org
*Admitted *pro hac vice*

# TABLE OF CONTENTS

ARGUMENT .................................................................................................................................. 1

    I.    The Attorney General's Preemption Defenses Would Deprive Section 6104 of Any Practical Effect ................................................................................................ 1

        A.  The Attorney General's Citations to Legislative History Are Inapposite ...................... 3

        B.  The Attorney General's Broad Enforcement Powers Are Irrelevant in the Federal Preemption Context ........................................................................................ 5

    II.   The Attorney General Offers No Evidence That Her Demand for Plaintiff's Schedule B Is Narrowly Tailored to the State's Compelling Interests .......................... 6

    III.  Defendant Misstates Irreparable Injury .......................................................................... 9

CONCLUSION ............................................................................................................................. 10

| | |
|---|---|
| 1 | **TABLE OF AUTHORITIES** |
| 2 | |
| 3 | **CASES** |
| 4 | *Acorn Investments v. City of Seattle*, |
| 5 | 887 F.2d 219 (9th Cir. 1989) ............................................................................................. 7 |
| 6 | *Alexander v. Sandoval*, |
| 7 | 535 U.S. 275 (2001) .......................................................................................................... 1 |
| 8 | *Auer v. Robbins*, |
| 9 | 519 U.S. 452 (1997) .......................................................................................................... 4 |
| 10 | *Brock v. Local 375, Plumbers Int'l Union*, |
| | 860 F.2d 346 (9th Cir. 1988) ......................................................................................... 6, 7 |
| 11 | *Buckley v. Valeo*, |
| 12 | 424 U.S. 1 (1976) .............................................................................................................. 7 |
| 13 | *Church of Scientology v. IRS*, |
| 14 | 484 U.S. 9 (1987) ........................................................................................................... 3-4 |
| 15 | *Connecticut Nat'l Bank v. Germain*, |
| 16 | 503 U.S. 249 (1992) .......................................................................................................... 3 |
| 17 | *Dole v. Local Union 376, Plumbers Int'l Union*, |
| | 971 F.2d 969 (9th Cir. 1990) ......................................................................................... 6, 7 |
| 18 | *Griffin v. California*, |
| 19 | 380 U.S. 609 (1965) .......................................................................................................... 7 |
| 20 | *Livadas v. Bradshaw*, |
| 21 | 512 U.S. 107 (1994) .......................................................................................................... 5 |
| 22 | *McCulloch v. Maryland*, |
| 23 | 17 U.S. 316 (1819) ............................................................................................................ 5 |
| 24 | *McCutcheon v. FEC*, |
| | 572 U.S. __, No. 12-536 (2014) ........................................................................................ 7 |
| 25 | *NAACP v. Alabama*, |
| 26 | 357 U.S. 449 (1958) .......................................................................................................... 8 |
| 27 | *NAACP v. Button*, |
| 28 | 371 U.S. 415 (1963) .................................................................................................... 8, 10 |

*Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*,
  699 F.3d 962 (7th Cir. 2012) .................................................................................... 2
*Stanbury Law Firm, P.A. v. IRS*,
  221 F.3d 1059 (8th Cir. 2000) .................................................................................. 5
*Talley v. California*,
  362 U.S. 60 (1960) .................................................................................................... 7
*Toll v. Moreno*,
  458 U.S. 1 (1982) ...................................................................................................... 2

**CONSTITUTIONAL PROVISIONS**

CAL. CONST. art. V, § 13 .................................................................................................. 8

United States Code, Title 26
  § 509(a) ...................................................................................................................... 5
  § 6104(c) .................................................................................................................... 1
  § 6104(c)(3) ....................................................................................................... *passim*
  § 6104(d)(3)(A) ......................................................................................................... 5

**OTHER AUTHORITIES**

California Government Code
  § 12598 ...................................................................................................................... 5

Treasury Regulation
  1.6033-3(c)(1) ........................................................................................................... 4

STATEMENT OF THE JOINT COMMITTEE ON TAXATION, 94TH CONG.,
  GENERAL EXPLANATION OF THE TAX REFORM ACT OF 1976 ................................... 3

# MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## ARGUMENT

### I. THE ATTORNEY GENERAL'S PREEMPTION DEFENSES WOULD DEPRIVE SECTION 6104 OF ANY PRACTICAL EFFECT.

Title 26 U.S.C. § 6104(c)[1] regulates the disclosure of charitable organizations' tax returns to state officers. Section 6104(c)(3) governs the release of the Schedule B information of § 501(c) organizations, which is only permitted "for the purpose of, *and only to the extent necessary in*, the administration of State laws regulating the solicitation or administration of the charitable funds or charitable assets of such organization." (emphasis supplied). The same provision also bars the Secretary of the Treasury from releasing Schedule B information to state officials—even for the narrow purpose authorized by Congress—if that form belongs to a § 501(c)(3) organization. These provisions are not ambiguous.

In response to CCP's arguments that § 6104(c)(3) conclusively preempts the Attorney General from compelling the release of CCP's Schedule B, Defendant nowhere grapples with, or even references, the language of the statute. Rather, she contends that the applicable portions of federal law merely "set[] forth the procedure by which the Attorney General could obtain tax information about an exempt organization from the IRS." Def. Br. at 8. (citing I.R.C. §§ 6104(c); (d)). In Defendant's view, the extensive, specific procedure outlined in § 6104(c)(3) does not limit her ability to obtain that same confidential information from Plaintiff by means of an "order ha[ving] the same force as a subpoena." Def. Br. at 4 (citing Cal. Gov't Code § 12589).

But "Congress does not legislate in a vacuum." *Alexander v. Sandoval*, 532 U.S. 275, 313 (2001) (Stevens, J. dissenting). Section § 6104(c) must have some meaning, and the Attorney

---

[1] All further statutory references are to Title 26 of the U.S. Code unless otherwise noted.

General's interpretation would render it devoid of any practical effect. Congress's purpose would be plainly frustrated if state officials regulating charitable solicitations could unilaterally compel Schedule B information from tax-exempt organizations. *See Toll v. Moreno*, 458 U.S. 1, 16 (1982) (a state may not evade federal tax exemption provided to G-4 visa holders by denying in-state tuition to the children of such visa holders, because "[t]he State may not recoup indirectly from respondents' parents the taxes that the Federal Government has expressly barred the State from collecting"); *see also Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 978 (7th Cir. 2012) (Indiana's claim of "plenary authority to exclude Medicaid providers for any reason, as long as it furthers a legitimate state interest" is preempted by Medicaid's guarantee of a free choice of provider, because "[i]f states are free to set any qualifications they want—no matter how unrelated to the provider's fitness to treat Medicaid patients—then the free-choice-of-provider requirement could be easily undermined by simply labeling any exclusionary rule as a 'qualification'").

Congress noted that Schedule B information may, in certain cases, be useful to state officials regulating a charitable solicitation regime. 26 U.S.C. § 6104(c)(3) (disclosure to state official only permitted "for the purpose of…the administration of State laws regulating the solicitation or administration of the charitable funds or charitable assets of such organizations"). But federal law requires that state attorneys general[2] address any requests for such information to the Secretary of the Treasury, and that any release be calibrated to the state's need for the information. *Id.* Congress required that state officials seeking this precise information provide a reasoned analysis of why it

---

[2] Congress in fact limited the range of state officers given access to IRS information: "[s]uch information may only be inspected by or disclosed to a person other than the appropriate State officer if such person is an officer or employee of the State and is designated by the appropriate State officer to receive the returns or return information under this paragraph on behalf of the appropriate State officer." *Id.*

2

is needed. Not only has the Attorney General failed to provide such an analysis to the Secretary of the Treasury, she has failed to provide one to this Court. Furthermore, even if the Defendant submitted a reasonable written request to the Treasury Secretary seeking Plaintiff's Schedule B information, the Secretary *could not comply* without violating the law. *Id*.

Instead, the Attorney General justifies her demands on two grounds. First, she claims that incidental legislative history belies the direct language of § 6104(c)(3). Second, albeit less explicitly, she states that, by virtue of her office, she wields considerable powers in the area of charitable solicitation. Plaintiff takes each argument in turn.

**A. The Attorney General's Citations to Legislative History Are Inapposite.**

Although the Attorney General never quotes § 6104(c)(3) directly, she does claim that "Congress specifically allowed for state officials to obtain tax returns and tax return information, including a complete Schedule B." Def. Br. at 10. To support this statement, the Attorney General relies on no statute, but rather on the Joint Committee on Taxation's "Summary of the Tax Reform Act of 1976," a brief note listed on Form 990, and an uncited assertion regarding IRS training.

The Attorney General's reliance on legislative history for the Tax Reform Act of 1976 is misplaced. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations and quotation marks omitted). In any event, that same summary document prepared by the Joint Committee states that "[t]he Act provides that returns and return information are to be confidential and not subject to disclosure except as specifically provided by statute." STATEMENT OF THE JOINT COMMITTEE ON TAXATION, 94TH CONG., GENERAL EXPLANATION OF THE TAX REFORM ACT OF 1976, 314, attached to Gordon Decl. ¶ 7, Ex. E, p. 52; *see also Church of*

3

*Scientology v. IRS*, 484 U.S. 9, 16 (1987) ("One of the major purposes" of the 1976 revisions to § 6103 "was to tighten the restrictions on the use of return information by entities other than [the IRS]"). Second, as the quotation supplied by Defendant indicates, the Tax Reform Act of 1976 merely "provides that Federal tax returns and return information may be disclosed to State tax officials *solely* for use in administering the State's tax laws," not a State's charitable solicitation regime, which is governed by § 6104(c)(3). Ex. E, p. 57 (emphasis supplied). The text further notes that disclosed "tax information will not be available to the State Governor or any other nontax personnel." *Id.* Third, as the reference to a taxpayer possessing "his" tax return indicates, the cited legislative history appears focused on individual tax returns, not those of organizations. *Id.* Finally, the Tax Reform Act of 1976 did not modify § 6104(c)(3) in any way—the legislative history cited by the Attorney General in her brief refers to Section 1202 of the 1976 law, which merely amended § 6103.

The Attorney General's citation to instructions on the Form 990 is similarly unhelpful. A number of organizations, including § 501(c)(6) business leagues and § 527 organizations (entities whose donor information is not protected by § 6104(c)(3)), file 990 forms with the Internal Revenue Service. Nothing on the form demonstrates that the IRS considered, much less sanctioned, the action taken by Defendant. Moreover, even if the Attorney General correctly understands the form, no species of agency deference would permit general instructions on a government form to trump the explicit language of a duly enacted statute. *Compare, e.g. Auer v. Robbins*, 519 U.S. 452, 461 (1997) (judicial deference applies to agency interpretation of agency's own regulations). The Attorney General's reference to IRS "Form 990 Basics" training is equally unavailing for similar reasons.[3]

---

[3] Curiously, the State also cites Treasury Regulation 1.6033-3(c)(1) for the principle that private foundations, organizations that nominally are classified under § 501(c)(3) but meet certain criteria

4

Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction (2:14-cv-00636-MCE-DAD)

**B. The Attorney General's Broad Enforcement Powers Are Irrelevant in the Federal Preemption Context.**

The Attorney General correctly notes that she has "broad powers under common law and California statutory law to carry out [her] charitable trust enforcement responsibilities." Cal. Gov't Code § 12598. She then suggests that denying her the ability to unilaterally compel confidential tax information would infringe upon her traditional police powers. Def. Br. at 7. But of course, the general breadth of her powers in the realm of charitable solicitation oversight is irrelevant if federal law has preempted that authority. *See Livadas v. Bradshaw*, 512 U.S. 107, 120 (1994) ("The power to tax is no less the power to destroy…merely because a state legislature has an undoubtedly rational and 'legitimate' interest in raising revenue") (citing *McCulloch v. Maryland*, 17 U.S. 316 (1819)). Further, and particularly relevant for Plaintiff's First Amendment claim discussed *infra*, the Attorney General predicated her demand for CCP's donors upon a conclusory two-sentence explanation of the State's interest in preventing fraud, self-dealing, and the like. Def. Br. at 13-14. But Defendant offers no explanation whatsoever as to how Plaintiff's Schedule B will help further those interests.[4]

This leaves the case precisely as it was initially pled by CCP. The evidence of Congress's intention to preempt California rests in the language of § 6104 itself.

---

under 26 U.S.C. § 509(a), provide Schedule B information to state attorneys general. Def. Br. at 9-10, n. 5. Perhaps so, but Schedule B information for private foundations is not generally kept confidential, and is available for public inspection. 2 U.S.C. § 6104(d)(3)(A). Regardless, CCP is not a private foundation. *See Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1062 (8th Cir. 2000) ("[A] tax-exempt organization is not automatically classified as a private foundation. Indeed, if a § 501(c)(3) organization does not meet the distinct requirements provided by § 509(a), the organization is treated as public charity").

[4] In fact, information that would be helpful toward these legitimate ends is available on the publically available remainder of Plaintiff's Form 990, which Plaintiff has provided to Defendant.

5

Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction (2:14-cv-00636-MCE-DAD)

## II. THE ATTORNEY GENERAL OFFERS NO EVIDENCE THAT HER DEMAND FOR PLAINTIFF'S SCHEDULE B IS NARROWLY TAILORED TO THE STATE'S COMPELLING INTERESTS.

The Attorney General's defense to Plaintiff's First Amendment claim rests on three premises. First, that state-mandated disclosure of donors may only be cabined upon a demonstration that such disclosure will lead to threats, harassment, and reprisals. Def. Br. at 11. Second, that the Attorney General's law enforcement interest permits this sort of disclosure, even under the harsh test of strict scrutiny. Def. Br. at 13. Third, the Attorney General offers assurances that the private identities of CCP's donors will never be made public. *Id.*

For the first principle, the Attorney General relies upon a series of labor cases. Def. Br. at 11-13. But these cases are all distinguishable, as each stemmed from the same set of facts. There, the Secretary of Labor, pursuant to his statutory powers, "initiated a compliance audit of Local 375." *Brock v. Local 375, Plumbers Int'l Union*, 860 F.2d 346, 348 (9th Cir. 1988). The audit revealed various discrepancies and suspect transactions, and only then did the government subpoena information about the union's funding. *Id.*; *see also Dole v. Local Union 375, Plumbers Int'l Union*, 921 F.2d 969, 970-971 (9th Cir. 1990) (reciting same facts).

This case is markedly different. Aside from generalized pronouncements concerning her authority over the Registry of Charitable Trusts, the Attorney General has provided no particularized rationale for obtaining CCP's donor information.[5] Indeed, the Attorney General has even posited that obtaining Plaintiff's Schedule B eliminates the need for her to audit entities in the Registry.[6]

---

[5] Moreover, in previous years the State apparently had no difficulty in regulating CCP, despite having no access to Plaintiff's confidential Schedule B information. Def. Br. at 2.

[6] Plaintiff again notes that its donor information is unlikely to be particularly helpful in enforcing laws against "self dealing, improper loans, interested persons, or illegal and unfair business practices." Def. Br. at 13-14 (citations to California statutes omitted). Furthermore, Plaintiff notes

6

Plaintiff's Reply to Defendant's Opposition to Motion for Preliminary Injunction (2:14-cv-00636-MCE-DAD)

Moreover, the unconstitutionality of the disclosure of an organization's financial supporters is not always predicated upon a finding of threats, harassment, or reprisals. *Talley v. California*, 362 U.S. 60, 65 (1960) (striking down city ordinance requiring the identification of persons who prepared, distributed, or sponsored handbills on the condition of public distribution as overbroad without finding that plaintiff was at risk of threat, harassment, and reprisal); *Acorn Investments v. City of Seattle*, 887 F.2d 219, 225 (9th Cir. 1989) (declaring municipality's shareholder disclosure regime for certain adult businesses unconstitutional without such a *prima facie* showing). And the *Brock* and *Dole* courts both recognized this. *Dole v. Local 375,* 921 F.2d at 971 (9th Cir. 1990) (noting plaintiffs would have to "'demonstrate that enforcement of the subpoenas will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of the members' associational rights'") (quoting *Brock*, 860 F.2d at 350).

To the second point, the burden is on the Attorney General to demonstrate that the specific disclosure demanded is properly tailored to the asserted state interests. *Buckley v. Valeo*, 424 U.S. 1, 65 (1976). The Attorney General notes that she has a compelling interest in pursuing her "primary responsibility for supervising charitable trusts and public benefit corporations in California to protect charitable assets for their intended use." Def. Br. at 13. Yet nothing demonstrates that the disclosure she demands fits that interest. Even under "exacting scrutiny", a somewhat lower standard of review than "strict scrutiny," a state must demonstrate that it has used the "least restrictive means" in breaching the associational rights of an organization. *McCutcheon v. FEC*, 572 U.S. \_\_\_, No. 12-536 slip op. at 7-8 (2014) (Roberts, C.J. for the plurality). The Attorney

---

that while constitutional violations may make government prosecution more efficient, that is beside the point. *See e.g. Griffin v. California*, 380 U.S. 609, 614 (1965) (finding it unconstitutional for the prosecution to "comment on the refusal to testify").

General has plainly not done so here. For example, given that her powers rest within the state of California, CAL. CONST. art. V, § 13, she could have limited her demand to only the names and addresses of in-state donors.[7]

Furthermore, Plaintiff agrees that the State's interest in preventing the parade of horribles Defendant's brief details is indeed compelling. But once again, CCP notes that the Attorney General has provided no explanation of the mechanism by which this form of disclosure serves that interest, especially as all the information on Plaintiff's Form 990—with the sole exception of the names and addresses of its donors—is available. The Attorney General's suggestion of a link—any link—between this specific information and the State's interest is entirely conclusory.

The Attorney General does make one (fleeting) tailoring argument. She argues that "[g]iven that the Registry keeps confidential the identities of contributors reported on Schedule B…the reporting and disclosure requirements…avoid unnecessarily impinging upon rights of association, if at all." Def. Br. at 14. But any compelled disclosure—even if the state never publicizes the disclosed information—infringes upon associational freedoms. Indeed, *NAACP v. Alabama* controls in this regard, as it spoke to "*state* scrutiny of membership lists," not merely public disclosure. 357 U.S. 449, 466 (1958) (emphasis supplied).

Finally, the Attorney General's assurances—bolstered by Mr. Foley's sparse declaration (Ex. F)—offer scant support for the proposition that CCP's donor information will always remain confidential. Defendant's claims pale in light of her belief that "Congress…[has] exempted state reporting and disclosure laws from federal confidentiality requirements." Def. Br. at 10.

---

[7] Plaintiff does not concede that such a rule would be necessarily constitutional, but it would provide more "breathing space" for First Amendment freedoms than does the Attorney General's current approach. *NAACP v. Button*, 371 U.S. 415, 433 (1963) ("Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity") (citing *Cantwell v. Connecticut*, 310 U.S. 296, 311 (1940)).

Defendant's demonstrable belief that this includes laws against the disclosure of contributor information undermines these assurances. Furthermore, Defendant has provided Plaintiff no concrete assurance that her confidentiality system is a permanent fixture, nor that line employees will scrupulously protect Plaintiff's donor information. Plaintiff is especially concerned given Defendant's confusion concerning certain portions of federal tax law, such as the distinction between private foundations and other § 501(c)(3) organizations. *See* note 2, *supra*.

In sum, the Attorney General has simply asserted a right to obtain CCP's donor information. She has provided no case law that supports her endeavor. She has not demonstrated that this information would serve her stated interests. She has not demonstrated that this is the least restrictive means of furthering those interests. And she has not provided more than vague, unenforceable assurances that Plaintiff's contributor data will remain confidential.

### III. DEFENDANT MISSTATES IRREPARABLE INJURY.

In the Attorney General's discussion of irreparable injury, she suggests that "it is not in the public interest to interfere with the Attorney General's authority to supervise and regulate charitable organizations and to enforce the law by limiting her ability to request and receive highly relevant information." Def. Br. at 15. Once again, Plaintiff questions the relevance of this information: unless the Defendant can articulate a rationale under which CCP's donor list would be relevant to the regulation of the Registry of Charitable Trusts, it is difficult to see the threat to the public interest.

The Attorney General further argues that "[t]o the extent that plaintiff contends that the fines that could be imposed under the Act if it fails to furnish a completely copy of its schedule B will cause it harm, it can readily avoid such a consequence by simply complying with the law." Def. Br. at 15. Giving Plaintiff a choice between compliance with an unconstitutional statute, and

9

the threat of losing its ability to raise funds in California, is precisely the dilemma necessitating this injunction. *See NAACP v. Button*, 371 U.S. at 433 ("The threat of sanctions may deter the[] exercise" of First Amendment liberties "almost as potently as the actual application of sanctions") (citation omitted).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction ought to be granted.

Dated this 10th day of April, 2014.

Respectfully Submitted,

/s/ Alan Gura
Alan Gura, Calif. Bar No. 178,221
Gura & Possesky, PLLC
105 Oronoco Street, Suite 305
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665
alan@gurapossessky.com

/s/ Allen Dickerson
Allen Dickerson*
Center for Competitive Politics
124 S. West St., Suite 201
Alexandria, VA 22314
703.894.6800/Fax 703.894.6811
adickerson@campaignfreedom.org
*Admitted *pro hac vice*

CERTIFICATE OF SERVICE

Case Name: **Center for Competitive Politics v. Kamala Harris**    No. **2:14-cv-00636-MCE-DAD**

I hereby certify that on April 10, 2014, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**PLAINTIFF'S REPLY TO DEFENDANT ATTORNEY GENERAL KAMALA D. HARRIS'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on April 10, 2014, at Alexandria, Virginia.

Allen Dickerson                                                          /s/ Allen Dickerson
Declarant                                                                       Signature