1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11    CENTER FOR COMPETITIVE                 No.  2:14-cv-00636-MCE-DAD
      POLITICS,
12
                          Plaintiff,
13                                            **MEMORANDUM AND ORDER**

14          v.

      KAMALA HARRIS,
15
                          Defendant.
16

17          On March 7, 2014, Plaintiff Center for Competitive Politics ("Plaintiff") filed a

18    Complaint for Declaratory and Injunctive Relief against Defendant Kamala Harris in her

19    official capacity as Attorney General of the State of California ("Defendant").  Compl.,

20    ECF No. 1.  Plaintiff then filed a motion for a preliminary injunction seeking to enjoin

21    Defendant from requiring an unredacted copy of Plaintiff's IRS Form 990 Schedule B as

22    a condition of soliciting funds in California.  ECF No. 9.  Defendant opposed the Motion,

23    ECF No. 10, and the Court held a hearing on the Motion on April 17, 2014.  At the

24    hearing, the Court took the Motion under submission; this written order follows.  For the

25    following reasons, Plaintiff's Motion for a Preliminary Injunction, ECF No. 9, is DENIED.

26    ///

27    ///

28    ///

                                            1

1

2

## BACKGROUND[1]

3      Plaintiff is a Virginia nonprofit corporation recognized by the Internal Revenue

4   Service as a § 501(c)(3) educational organization.  To support its activities, Plaintiff

5   solicits charitable contributions nationwide.  In order to legally solicit tax-deductible

6   contributions in California, an entity must be registered with the state's Registry of

7   Charitable Trusts ("Registry"), which is administered by California's Department of

8   Justice.  To maintain membership in the Registry, nonprofit corporations must file annual

9   periodic written reports with the state Attorney General, which include the Annual

10  Registration Renewal Fee Report as well as the Internal Revenue Service Form 990.

11  Form 990 has a supplement, Schedule B, which lists the names and addresses of an

12  organization's contributors.[2]

13      Plaintiff has been a member of the Registry since 2008.  On January 9, 2014,

14  Plaintiff filed its Annual Registration Renewal Fee Report with Defendant, including a

15  copy of its Form 990 and a redacted version of its Schedule B omitting the names and

16  addresses of its contributors.  Plaintiff subsequently received a letter from Defendant

17  dated February 6, 2014 ("Letter").  See ECF No. 1-1.  In the Letter, Defendant

18  acknowledged receipt of Plaintiff's periodic written report, but stated that "[t]he filing is

19  incomplete because the copy of [its] Schedule B, Schedule of Contributors, does not

20  include the names and addresses of contributors."  Id. (emphasis omitted).  The Letter

21  states that "[t]he Registry retains Schedule B as a confidential record for IRS Form 990

22  and 990-EZ filers" and requires that Plaintiff must "[w]ithin 30 days of the date of this

23  letter . . . submit a complete copy of Schedule B, Schedule of Contributors, for the fiscal

24  year noted above, as filed with the Internal Revenue Service."  Id. (emphasis omitted).

25  _____

26      [1] The facts are taken, often verbatim, from Plaintiff's Complaint, ECF No. 1, and Motion, ECF
    No. 9, unless stated otherwise.

27      [2] To reduce the reporting burden on filers, Defendant adopted IRS Form 990 as the primary
    reporting document for charitable entities required to file annual reports with the Registry.  Opp'n, ECF
    No. 10 at 11 (citing Cal. Code Regs. tit. 11, § 301).  The Schedule B filed by public charities is treated as a
28  confidential document and is not made available for public viewing.  See id.; ECF No. 10-8 at 2-3.

1    Plaintiff seeks to enjoin Defendant from requiring an unredacted copy of its IRS

2    Form 990 Schedule B as a condition of soliciting funds in California.  Plaintiff argues that

3    Defendant's demand is preempted by federal law and that it unconstitutionally infringes

4    upon the freedom of association.  Mot., ECF No. 9.

5

6                                        **STANDARD**

7

8    A preliminary injunction is an extraordinary remedy, and the moving party has the

9    burden of proving the propriety of such a remedy by clear and convincing evidence.  See

10   Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 442 (1974).  The party

11   requesting preliminary injunctive relief must show that "he is likely to succeed on the

12   merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that

13   the balance of equities tips in his favor, and that an injunction is in the public interest."

14   Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); Stormans, Inc. v.

15   Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter).  To grant preliminary

16   injunctive relief, a court must find that "a certain threshold showing is made on each

17   factor."  Leiva–Perez v. Holder, 640 F.3d 962, 966 (9th Cir. 2011).

18   Alternatively, under the so-called sliding scale approach, as long as the Plaintiffs

19   demonstrate the requisite likelihood of irreparable harm and show that an injunction is in

20   the public interest, a preliminary injunction can still issue so long as serious questions

21   going to the merits are raised and the balance of hardships tips sharply in Plaintiffs'

22   favor.  Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011)

23   (concluding that the "serious questions" version of the sliding scale test for preliminary

24   injunctions remains viable after Winter).

25   These two alternatives represent two points on a sliding scale, pursuant to which

26   the required degree of irreparable harm increases or decreases in inverse correlation to

27   the probability of success on the merits.  Roe v. Anderson, 134 F.3d 1400, 1402 (9th Cir.

28   1998); United States v. Nutri-cology, Inc., 982 F.2d 1374, 1376 (9th Cir. 1985).  Under

1    either formulation of the test for granting a preliminary injunction, however, the moving

2    party must demonstrate a significant threat of irreparable injury.  Oakland Tribune, Inc. v.

3    Chronicle Publ'g. Co., 762 F.2d 1374 (9th Cir. 1985).

4

5                                    **ANALYSIS**

6

7            **A.  Likelihood of Success on the Merits**

8            Through this action, Plaintiff seeks to block Defendant from requiring that it

9    provide an unredacted copy of Plaintiff's IRS Form 990 Schedule B to Defendant as a

10   condition of soliciting funds in California.  Plaintiff asserts that it will prevail on the merits

11   on two separate grounds.  First, Plaintiff argues that the Internal Revenue Code shields

12   the information that Defendant seeks and that Defendant's demand is therefore

13   preempted by federal law.  Second, Plaintiff contends that Defendant's demand

14   unconstitutionally infringes upon its freedom of association.  The Court will address each

15   argument in turn.

16                    **1.    Federal Law**

17           As discussed above, Plaintiff files tax information on Form 990 with the IRS.

18   While some of Plaintiff's tax return information is available to the public, the IRS does not

19   publically disclose the names or addresses of any of Plaintiff's contributors.  See

20   26 U.S.C. § 6104(b), (d)(3) (providing that the public inspection copy of 501(c)(3)

21   organization's tax information "shall not require the disclosure of the name or address of

22   any contributor to the organization").  Federal law also prevents the Secretary of the

23   Treasury from releasing the names and addresses of contributors to section 501(c)(3)

24   organizations to state agencies.  See 26 U.S.C. § 6104(c)(3) ("Upon written request by

25   an appropriate State officer, the Secretary may make available for inspection or

26   disclosure returns and return information of any organization described in section 501(c)

27   (other than organizations described in paragraph (1) or (3) thereof) for the purpose of,

28   and only to the extent necessary in, the administration of State laws regulating the

                                           4

1   solicitation or administration of the charitable funds or charitable assets of such

2   organizations.") (emphasis added).  Through this statutory language, Plaintiff argues that

3   federal law preempts Defendant's request for a copy of its unredacted Schedule B form.

4       The Supreme Court has articulated two cornerstones of its preemption

5   jurisprudence.  "First, the purpose of Congress is the ultimate touchstone in every pre-

6   emption case.  Second, in all pre-emption cases, and particularly in those in which

7   Congress has legislated in a field which the States have traditionally occupied, we start

8   with the assumption that the historic police powers of the States were not to be

9   superseded by the Federal Act unless that was the clear and manifest purpose of

10  Congress."  Wyeth v. Levine, 555 U.S. 555, 565 (2009) (internal citations and quotations

11  omitted).  "Courts are reluctant to infer preemption, and it is the burden of the party

12  claiming that Congress intended to preempt state law to prove it."  Viva! Int'l Voice For

13  Animals v. Adidas Promotional Retail Operations, Inc., 162 P.3d 569, 572 (Cal. 2007)

14  (internal citations omitted).  Here, Plaintiff contends that because Defendant's actions

15  contravene the clear intent of Congress, Defendant's actions are invalid through express

16  preemption, field preemption, and conflict preemption.

17                    **2.**    **Express Preemption**

18      Relying on 26 U.S.C. § 6104, Plaintiff contends that the Internal Revenue Code

19  ("IRC") "expressly preempts a state attorney general from compelling Plaintiff to hand

20  over its Schedule B as filed."  Mot., ECF No. 9-1 at 13-14. "[E]xpress preemption arises

21  when Congress defines explicitly the extent to which its enactments pre-empt state law. .

22  . . and when Congress has made its intent known through explicit statutory language,

23  the courts' task is an easy one."  Viva! Int'l Voice For Animals, 162 P.3d at 571-72.

24      Plaintiff's argument is unsupported by the text of the IRC.  The IRC only bars the

25  IRS from providing the requested Schedule B to state agencies, it does not address

26  whether a state official, such as Defendant, may request such information directly from

27  an organization such as Plaintiff.  Cf. Stokwitz v. United States, 831 F.2d 893, 896 (9th

28  Cir. 1987) (noting that "there is no indication in either the language of section 6103 or its

1  legislative history that Congress intended to enact a general prohibition against public

2  disclosure of tax information").  Therefore, because Congress did not express any intent

3  to prevent state agencies from making requests for tax information such as Defendant's

4  directly from 501(c)(3) organizations in the language of Section 6104, or any other

5  section of the IRC, Plaintiff may not rely on express preemption.

6  ### 3.    Field and Conflict Preemption

7  Plaintiff also argues that Defendant's action is preempted because "Congress has

8  well occupied the field regarding the disclosure of federal tax returns" and that "the

9  [Defendant's] actions stand[] as an obstacle to the accomplishment and execution of the

10  full purposes and objectives of Congress."  Mot., ECF No. 9-1 at 15-16 (internal citation

11  omitted).  "Even without an express provision for preemption, . . . [w]hen Congress

12  intends federal law to 'occupy the field,' state law in that area is preempted.  And even if

13  Congress has not occupied the field, state law is naturally preempted to the extent of

14  any conflict with a federal statute."  Crosby, 530 U.S. 363, 372-73 (2000).

15  Plaintiff asserts that because the "IRC comprehensively regulates how

16  confidential tax return information must be treated—and assesses significant sanctions

17  for violations[,]" Defendant's action, "if fully implemented, would interfere with Congress's

18  occupation of the field."  ECF No. 9-1 at 15-16.  Plaintiff points only to the statutory

19  language of the IRC, specifically sections 6103 and 6104, to support its contention.  See

20  ECF No. 9-1 at 15.  An examination of the IRC's legislative history reveals that

21  Congress's intent in enacting "the elaborate disclosure procedures of section 6103" was

22  not directed toward preventing actions such as Defendant's, but instead to "[control] the

23  distribution of information the IRS receives directly from the taxpayer-information the

24  taxpayer files under compulsion and the threat of criminal penalties."  Stokwitz, 831 F.2d

25  at 895 (citing the Congressional Record).  The Ninth Circuit explained that

26  [t]he legislative history of section 6103 indicates Congress's
overriding purpose was to curtail loose disclosure practices
27  by the IRS. Congress was concerned that IRS had become a
"lending library" to other government agencies of tax
28  information filed with the IRS, and feared the public's

confidence in the privacy of returns filed with IRS would suffer.  The Senate Report explained: "[T]he IRS probably has more information about more people than any other agency in this country. Consequently, almost every other agency that has a need for information . . . logically seeks it from the IRS."  Congress also sought to end "the highly publicized attempts to use the Internal Revenue Service for political purposes" involving delivery of tax returns to the White House by the IRS; and to regulate "the flow of tax data from the IRS to State Governments."  In short, section 6103 was aimed at curtailing abuse by government agencies of information filed with the IRS.  At the same time, Congress realized tax information on file with the IRS was often important to other government agencies. Revised section 6103 represents a legislative balancing of the right of taxpayers to the privacy of tax information in the hands of the IRS and the legitimate needs of others for access to that information.

Stokwitz, 831 F.2d at 894-95 (9th Cir. 1987) (internal citations and quotations omitted) (emphasis added).  The Ninth Circuit also noted that "the statutory definitions of 'return' and 'return information' to which the entire statute relates, confine the statute's coverage to information that is passed through the IRS," not information provided by a taxpayer to another entity.  Id. at 895-96 (emphasis added).  Thus, it is clear that Congress's intent in regulating how confidential tax return information must be treated was to restrict how tax information is obtained from the IRS, not from taxpayers directly.

Nonetheless, Plaintiff argues that "[Defendant's] interpretation [of section § 6104] would render [it] devoid of any practical effect [and that] Congress's purpose would be plainly frustrated if state officials regulating charitable solicitations could unilaterally compel Schedule B information from tax-exempt organizations."  Reply, ECF No. 11 at 6-7.  However, in Stokwitz, the Ninth Circuit rejected a similar argument.  In that case, the appellant argued that the "purpose of the protection afforded tax data by sections 6103 and 7213 'would be meaningless if such protection were not extended to copies of tax returns and to the pertinent data and information in the hands of the taxpayer.'" Stokwitz, 831 F.2d at 896.  The Ninth Circuit rejected that contention noting that "[i]t is quite clear . . . that this was not Congress's view when it revised section 6103."  Id. Citing the Senate report, the Court concluded that Congress "disclaimed any intention 'to

7

1  limit the right of an agency (or other party) to obtain returns or return information directly

2  from the taxpayer.'" Id.  Therefore, there is little doubt that Congress's intent was to

3  regulate the IRS, not state agencies.

4        Plaintiff's attempts to distinguish Stokwitz are unavailing.  Although the provision

5  in question, namely section § 6104, was added in 2006, there is no legislative record to

6  suggest that Congress intended to deviate from its intent as expressed in Stokwitz.

7  Absent any evidence that Congress intended to prevent state Attorneys General from

8  obtaining the requested information directly from organizations, Plaintiff cannot meet its

9  burden in showing that it is likely to succeed on the merits of its preemption argument.

10  Therefore, a preliminary injunction on the basis of preemption is not warranted.

11                  **4.**      **Freedom of Association**

12        Plaintiff also argues that it will prevail on the merits because Defendant's demand

13  unconstitutionally infringes upon its First Amendment freedom of association.

14  Specifically, Plaintiff objects to Defendant's demand because "[f]inancial support is the

15  lifeblood of organizations engaged in public debate" and because Defendant's action

16  "threatens to curtail that necessary supply of resources."  Mot., ECF No. 9-1 at 18.

17  Plaintiff argues that while "a government may compel certain disclosures in certain

18  circumstances[,] . . . associational freedom may [only] be limited, so long as the state

19  does so narrowly and specifically, in pursuit of an obvious and compelling government

20  interest." Id. at 17.  Thus, Plaintiff argues that  because "the Attorney General has

21  provided no particularized rationale for obtaining CCP's donor information[,]"

22  Defendant's request violates the First Amendment.  Reply, ECF No. 11 at 11.

23        However, in the Ninth Circuit, courts first address whether a plaintiff has

24  presented a prima facie showing of arguable first amendment infringement.  See Perry v.

25  Schwarzenegger, 591 F.3d 1126, 1140 (9th Cir. 2009).  Such a showing requires

26  Plaintiff to demonstrate that Defendant's action "will result in (1) harassment,

27  membership withdrawal, or discouragement of new members, or (2) other consequences

28  which objectively suggest an impact on, or 'chilling' of, the members' associational

1   rights." Brock v. Local 375, Plumbers Int'l Union of Am., AFL-CIO, 860 F.2d 346, 350

2   (9th Cir. 1988) (citations omitted); see also Dole v. Serv. Employees Union, AFL–CIO,

3   Local 280, 950 F.2d 1456, 1459–61 (9th Cir.1991).  "This must be shown by

4   presentation of objective and articulable facts, which go beyond broad allegations or

5   subjective fears." Van Fossen v. United States, CV-F-93-137-DLB, 1993 WL 655008 at

6   *2 (E.D. Cal. Dec. 27, 1993) (citing Brock, 860 F.2d at 350).  "A merely subjective fear of

7   future reprisals is an insufficient showing of infringement of associational rights." Id.

8   (citing Buckley v. Valeo, 424 U.S. 1, 71-72 (1976)).  If Plaintiffs "can make the necessary

9   prima facie showing, the evidentiary burden will then shift to" Defendant. Brock, 860

10   F.2d at 350.

11       Rather than argue that Plaintiff has satisfied the prima facie requirement, Plaintiff

12   disputes its applicability arguing that Brock and Dole were factually distinguishable labor

13   cases.[3]  Instead, Plaintiff argues that the Court should follow a line of cases where

14   plaintiffs were not required to first make a prima facie showing of first amendment

15   infringement.  Plaintiff points to Talley v. California, 362 U.S. 60, 65 (1960) and Acorn

16   Investments v. City of Seattle, 887 F.2d 219, 225 (9th Cir. 1989) as examples of such

17   cases.  However, these cases are distinguishable from the facts at hand as they pertain

18   to instances where members of groups would be publicly identified and, as a result, face

19   retaliation. See Talley, 362 U.S. at 65 (relying on earlier holdings where the

20   "identification [of group members] and fear of reprisal might deter perfectly peaceful

21   discussions of public matters of importance"); Acorn Investments, 887 F.2d at 225

22   (striking down a city ordinance requiring the public disclosure of the names and

23   addresses of shareholders of corporations because it may have a chilling effect on

24   expression).  In contrast, here, Plaintiff is challenging Defendant's request to view

25   Plaintiff's Schedule B in confidence and has not alleged that its members would face any

26   retaliation or reprisals.

27   _____

28       [3] The Ninth Circuit has also applied this first amendment framework, however, in non-labor cases.
     See, e.g., Perry v. Schwarzenegger, 591 F.3d 1126, 1140 (9th Cir. 2009).

1    Brock provides a more analogous set of facts.  In that case, the Secretary of

2    Labor, pursuant to his statutory powers, "initiated a compliance audit" of Local 375 after

3    the Department of Labor discovered a discrepancy.  Brock, 860 F.2d at 348.  The

4    Secretary of Labor subpoenaed "all records pertaining to the fund" and the union refused

5    to comply, arguing that doing so would violate its First Amendment rights.  Id.  The Ninth

6    Circuit held that in order to prevail on a freedom of association claim in the face of a

7    "lawful governmental investigation[,]" the union must demonstrate a "prima facie showing

8    of arguable first amendment infringement."  Id. at 349-51.

9        Based on the evidence provided to the Court, Defendant's request appears to be

10   justified by a legitimate law enforcement purpose pursuant to Defendant's role as the

11   chief regulator of charitable organizations in the state.  See Cal. Gov't Code §§

12   12598(a), 12581.  Under California's Supervision of Trustees and Fundraisers for

13   Charitable Purposes Act, Defendant is charged with supervising charitable trusts and

14   public benefit corporations incorporated in, or conducting business in California and to

15   protect charitable assets for their intended use.  See Opp'n, ECF No. 10 at 10 (citing

16   Cal. Gov't Code §§ 12598(a), 12581).  In addition, Defendant has "broad powers under

17   common law and California statutory law to carry out these charitable trust enforcement

18   responsibilities."  Cal. Gov't Code § 12598(a).  Defendant may investigate transactions

19   and relationships to ascertain whether the purposes of the corporation or trust are being

20   carried out.  Opp'n, ECF No. 10 at 10.  In order to do so, Defendant may require any

21   agent, trustee, fiduciary, beneficiary, institution, association, or corporation, or other

22   person to appear and to produce records.  Id. (citing Cal. Gov't Code § 12588).  Such an

23   order "shall have the same force and effect as a subpoena."  Cal. Gov't Code § 12589.

24   Defendant may also require periodic written reports from charitable organizations.  See

25   Cal. Gov't Code § 12586.  Further, pursuant to the Supervision of Trustees and

26   Fundraisers for Charitable Purposes Act, Defendant maintains the Registry, and in so

27   doing, has the power to obtain "whatever information, copies of instruments, reports, and

28   records are needed for the establishment and maintenance of the register."  Id. (citing

1   Cal. Gov't Code § 12584).  In light of Defendant's role as the state's chief regulator of

2   charitable organizations, Defendant's request is more analogous to the facts in Brock

3   and Dole than the challenges to ordinances in Talley and Acorn Investments. Therefore,

4   the Court concludes that the prima facie showing requirement as articulated by the Ninth

5   Circuit in Brock is applicable in this case.

6          Here, Plaintiff has not articulated any, objective specific harm that will result to its

7   members if Defendant is permitted to require that Plaintiff produce an unredacted copy

8   of its Schedule B.  Plaintiff only suggests that if it is forced to comply with Defendant's

9   demand, such an action "threatens to curtail" its financial support.  ECF No. 9-1 at 18.

10  As Defendant notes, "[m]ere speculation about or opinion of the possible consequences

11  of such disclosure is entirely inadequate" to support a prima facie showing of arguable

12  first amendment infringement.  ECF No. 10 at 18; see Dole, 921 F.2d at 974.  For

13  example, in Dole, the Ninth Circuit held that "two letters from members who stated that

14  they would no longer attend meetings" satisfied the prima facie showing requirement and

15  "clearly suggest[ed] 'an impact on . . . the members' associational rights.'" Dole, 950

16  F.2d at 1460 (citing Brock, 860 F.2d at 350).  Plaintiff did not make such a showing here.

17  Therefore, because Plaintiff failed to establish a prima facie showing of arguable first

18  amendment infringement, it has not demonstrated that it is likely to prevail on the merits

19  at this point in the proceeding.

20         Moreover, even if Plaintiff had presented a prima facie showing, based on the

21  evidence before the Court at this time, Defendant's request appears to be justified by

22  compelling state interests and is narrowly tailored to achieve those interests.

23  Defendant's interest in performing her regulatory and oversight function as delineated by

24  state law is compelling and substantially related to the disclosure requirement.

25  Defendant points out that the requested information allows her to determine "whether an

26  organization has violated the law, including laws against self-dealing, Cal. Corp. Code

27  § 5233; improper loans, id. § 5236; interested persons, id. § 5227; or illegal or unfair

28  business practices, Cal. Bus. & Prof. Code § 17200."  Opp'n, ECF No. 10 at 19-20.

1  Further, the required disclosure appears to be narrowly tailored with respect to Plaintiff's

2  right of association because the Registry is kept confidential and Plaintiff's Schedule B

3  would not be disclosed publically.  On this ground too, then, Plaintiff failed to show it is

4  likely to succeed on the merits.

5          **B.**     **Irreparable Harm, Balancing the Hardships, and Public Interest**

6         Plaintiff asserts that it will suffer irreparable injury through the loss of its  First

7  Amendment freedoms.  While "[a]n alleged constitutional infringement will often alone

8  constitute irreparable harm. . . In this case, however, the constitutional claim is too

9  tenuous to support" the issuance of a preliminary injunction.  <u>Goldie's Bookstore, Inc. v.</u>

10  <u>Superior Court of State of Cal.</u>, 739 F.2d 466, 472 (9th Cir. 1984).  Because "the Court

11  finds [that] no serious First Amendment questions are raised. . . . there is no risk of

12  irreparable injury to Plaintiffs' contributors."  <u>ProtectMarriage.com v. Bowen</u>,

13  599 F. Supp. 2d at 1226; <u>see</u> <u>Dex Media W., Inc. v. City of Seattle</u>, 790 F. Supp. 2d

14  1276, 1280-81 (W.D. Wash. 2011) (stating that "[b]ecause the court ultimately concludes

15  that Plaintiffs fail to establish either a likelihood of irreparable injury or that a preliminary

16  injunction would be in the public interest").  Based on the evidence before it, the Court

17  does not find that Plaintiff will suffer irreparable harm if a preliminary injunction is not

18  issued.  Moreover, in light of the facts as presented to the Court at this stage in the

19  proceeding, it is in the public interest that Defendant continues to serve chief regulator of

20  charitable organizations in the state in the manner sought.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1   **CONCLUSION**

2

3          Because Plaintiff failed to demonstrate that it is likely to succeed on the merits or

4   that Defendant's action will cause a significant threat of irreparable injury, Plaintiff's

5   Motion for Preliminary Injunction, ECF No. 9, is DENIED.

6          IT IS SO ORDERED.

7   Dated:  May 13, 2014

8

9

10  _____
    MORRISON C. ENGLAND, JR, CHIEF JUDGE
11  UNITED STATES DISTRICT COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28