Alan Gura, Calif. Bar No. 178,221

Gura PLLC

916 Prince Street, Suite 107

Alexandria, VA 22314

703.835.9085/F: 703.997.7665

alan@gurapllc.com


Allen Dickerson*

Zac Morgan**

Center for Competitive Politics

124 S. West St., Suite 201

Alexandria, VA 22314

703.894.6800/F: 703.894.6811

adickerson@campaignfreedom.org

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CENTER FOR COMPETITIVE POLITICS, | ) | Case No. 14-636 |
| Plaintiff, | ) | FIRST AMENDED COMPLAINT |
| v. | ) | |
| KAMALA HARRIS, in her official capacity as Attorney General of the State of California, | ) | |
| Defendant. | ) | |

## INTRODUCTION

The First Amendment, and the Internal Revenue Code, protect the privacy of individuals who wish to support charitable educational organizations that seek to advance the public good. Likewise, the Fourth Amendment secures papers and effects, including the papers of educational charities, against unreasonable seizure. Ignoring these protections, California officials are pressuring Plaintiff Center for Competitive Politics ("CCP"), a § 501(c)(3) charitable organization, to reveal its confidences. CCP brings this action to secure its rights and those of its supporters.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202, and 42 U.S.C. § 1983.

2. Venue for this action is proper in the United States District Court for the Eastern District of California per 28 U.S.C. § 1391(b).

PARTIES

3. Plaintiff Center for Competitive Politics ("CCP") is a Virginia nonprofit corporation, recognized by the Internal Revenue Service as a § 501(c)(3) public charity.

4. Defendant Kamala Harris is Attorney General of California, charged with enforcement of California's Uniform Supervision of Trustees for Charitable Purposes Act, codified at Cal. Gov. Code § 12581 *et seq.* (2016).

STATEMENT OF FACTS

*The Attorney General's Schedule B Demand.*

5. In order to legally solicit contributions in California, an organization raising charitable contributions must be registered with the state's Registry of Charitable Trusts ("Registry").

6. The Registry is administered by California's Department of Justice. Cal. Gov. Code § 12587.1 (2014).

7. Plaintiff has been a member of the Registry since 2008.

8. To maintain membership in the Registry, nonprofit corporations must file annual "periodic written reports" with the Attorney General, which "include the Annual Registration Renewal Fee

Report . . . as well as the Internal Revenue Service Form 990, which must be filed on an annual basis with the Registry." 11 Code of Cal. Regs. §§ 301, 306(c).

9. Absent registration, a covered nonprofit entity may not solicit contributions in California, a state containing a substantial portion of the population and wealth of the United States. Such a prohibition inhibits charities' ability to speak to Californians, and Californians' right to receive solicitations from entities that they would support, and thus chills the association of individuals both within and without the state.

10.    In previous years, Plaintiff has filed a periodic written report including its Federal Form 990, but, pursuant to 26 U.S.C. § 6104(d)(3)(A), has redacted the names and addresses of its contributors.

11.    Upon information and belief, at some point in the year 2010, the Attorney General commenced a policy of seeking unredacted Schedule B information from Registry filers as a precondition to membership in the Registry.

12.      Upon information and belief, the Attorney General did not announce this policy publicly, nor did the Attorney General promulgate rules, regulations, or even instructions for filers, to reflect this policy.

13.      Upon information and belief, the Attorney General instead chose to enforce this policy through the issuance of delinquency letters, in cases where Registry staff noticed that charities filed a redacted Schedule B.

14.      It is unknown how many delinquency letters have been sent pursuant to the Attorney General's unwritten policy.

15.      Although the Attorney General's delinquency letters request private information upon pain of administrative action, there is no process for precompliance review of that demand.

16.      It is unknown how many charities have been approved for Registry membership, despite having filed only redacted copies of Schedule B.

17.      The Attorney General has insisted that she must have access to the Schedule B information of all organizations soliciting

charitable funds from Californians because it is essential to her responsibility to enforce the law.

18.    Specifically, the Attorney General has explained that the information aids her mission of enforcing California laws prohibiting self-dealing, improper loans, interested persons, or illegal or unfair business practices

19.    However, upon information and belief, as of August 12, 2016, information available on an unredacted Schedule B has never served as the basis for initiating an investigation by the Attorney General into whether a charity was in violation of California laws against self-dealing, improper loans, interested persons, or illegal or unfair business practices. *Am. for Prosperity Found. v. Harris*, Case No. 14-9448 at 10 (C.D. Cal Apr. 21, 2016) ("*AFPF*") ("The record before the Court lacks even a single, concrete instance in which the pre-investigation collection of a Schedule B did *anything* to advance the Attorney General's investigative, regulatory or enforcement efforts") (emphasis supplied).

20.    Upon information and belief, as of August 12, 2016, the Registry has never used a complete, unredacted copy of a Schedule

B belonging to any Registry member or Registry applicant in any enforcement action for self-dealing, improper loans, interested persons, or illegal or unfair business practices. *Id.*

21.     On April 3, 2014, Kevis Foley—the Registrar of Charitable Trusts—filed a sworn statement in this Court, describing the Attorney General's Schedule B program. Dkt. 10-8 (Foley Decl.).

22.     Foley noted that "[a]s Registrar]," she was "responsible for overseeing" the Registry's "database of filings and information related to entities which are registered or required to be registered." Foley Decl. at 2.

23.     California law requires "reports filed with the Attorney General" to "be open to public inspection."[1] Cal. Gov. Code § 12590.

24.     Although her position is contrary to statute, Foley declared that "the Schedule B filed by public charities" with her office "has always been treated as a confidential document. All confidential documents are kept in separate files that are not available for public viewing." Foley Decl. at 2.

---

[1] There is only one exception, where the "content is not exclusively for charitable purposes." Cal. Gov. Code § 12590. Since the reports at issue here belong to a charitable organization, this exception does not apply.

25.     Further, she declared that "[t]his process has been consistent since 2007," and that while "[t]he Registry publishes the non-confidential documents on its searchable website, [it] maintains the [S]chedule B records as confidential records, accessible to in-house staff only." *Id.* at 3.

26.     Upon information and belief, Ms. Foley's sworn statements to this Court concerning the confidentiality of Schedule B information were, and are, false. *AFPF* at 15-18. Subsequent to making that sworn statement to this Court, Ms. Foley admitted in another U.S. District Court that she was aware of numerous instances of failure to maintain the confidentiality of this information. For example, in December 2013, the Registry's staff determined that the Schedule B for the Beyond Baroque Foundation had mistakenly been posted on the Registry's public website. Similarly, in August 2014, the Registry's staff determined that the Schedule B for the Esalen Institute had mistakenly been published on the Registry's public website. When a member of the Charitable Trusts Section contacted Ms. Foley to ask whether the Esalen Institute's Schedule B

"[s]hould . . . be public," Ms. Foley confirmed that it should be confidential and took it off the public website.

27.     The United States District Court for Central District of California has found, after trial, that at least 1,778 unredacted Schedule B forms have been made available on the public Registry Web site, including the "Schedule B for Planned Parenthood Affiliates of California . . . which included all the names and addresses of hundreds of donors." *AFPF* at 16.

28.     The amount of confidential Schedule B information still available on the Registry's public website is unknown. *Id*. at 16-17

29.     Upon information and belief, no disciplinary action has been taken, or is expected to be taken, against those responsible for the release of this confidential information.

30.     Upon information and belief, as of November 3, 2015, the Registry did not have a programmer on staff capable of determining whether or not unredacted Schedule B information was available on the public Registry Web site.

31.     Upon information and belief, the Attorney General's recent failure to safeguard the privacy of Schedule Bs filed with the

Registry occurred regularly throughout the period in which she asserts she has required unredacted Schedule Bs, and this failure to protect confidential information given to the Registry continues to the present day. *AFPF* at 17 (finding a "pervasive, recurring pattern of uncontained Schedule B disclosures—a pattern that has persisted even during th[at] trial . . . ").

32.     Before a sister court in this circuit, Ms. Foley testified under oath "that separating out Schedule Bs and other confidential materials from public filings is 'very tedious, very boring work' and that 'there is room for errors to be made'" in the separation of private donor information from information made publicly available. *AFPF* at 16.

33.     Accordingly, Plaintiff reasonably fears that, whether or not the Attorney General subjectively intends to maintain Schedule B as a "confidential" document, the Registry is unable to attest that its Schedule B information will in fact remain confidential.

34.     Effective July 8, 2016, the Attorney General promulgated a new regulation related to her Schedule B disclosure regime.

35.     This new regulation amended 11 Code of Calif. Regs. § 310, which governs the "public inspection of charitable trust records", and maintains that "reports filed with the Attorney General…shall be open to public inspection."

36.     The new regulation posits that "[d]onor information exempt from public inspection pursuant to" 26 U.S.C. § 6104(d)(3)(A), such as Plaintiff's donor list, "shall not be disclosed" by the Attorney General "except…[i]n a court or administrative proceeding brought pursuant to the Attorney General's charitable trust enforcement responsibilities" or "[i]n response to a search warrant." 11 Code of Calif. Regs. § 310(b).

37.     This regulation, however, does not cure the underlying problems amply identified by the United States District Court for the Central District of California, and provides no more assurance to Plaintiff than Ms. Foley's initial declaration before this Court.

38.     Upon information and belief, there remains no indication that the Attorney General has taken concrete steps to ensure compliance with 11 Code of Calif. Regs. § 310(b), such as adopting proper security measures, training her staff in these measures, or

disciplining those responsible for previous breaches of the privacy of donors in unredacted Schedule Bs, such as Planned Parenthood's, entrusted to the Attorney General.

39.     Nor does the regulation protect donor lists from becoming public under the California Public Records Act. Cal. Gov. Code § 6254(k). As the Ninth Circuit observed last year, "[i]t is unclear whether the Attorney General could avoid disclosing Schedule B forms under" that law. *Am. for Prosperity Found. v. Harris*, 809 F.3d 536, 542 (9th Cir. 2015).

40.     On January 9, 2014, Plaintiff filed its Annual Registration Renewal Fee Report with the Attorney General. In keeping with its usual practice, and having received no notice of a change in the Attorney General's policy, Plaintiff did not provide a donor list to her office.

41.     On February 6, 2014, Plaintiff received a letter from Defendant ("Demand Letter"). A true and correct copy of the Letter is attached to this Complaint as Exhibit 1.

42.     The Demand Letter acknowledged Defendant's receipt of CCP's periodic written report, but averred that "**[t]he filing is**

**incomplete** because the copy of Schedule B, Schedule of Contributors, does not include the names and addresses of contributors." (bold in original)

43.     The Demand Letter ordered Plaintiff to "submit a **complete** copy of Schedule B, Schedule of Contributors, for the fiscal year noted above, as filed with the Internal Revenue Service . . . 30 days of the date of this letter." (bold, underlining in original)

44.     On December 11, 2014, during the course of this litigation, Plaintiff received a "Warning of Assessment of Penalties and Late Fees, and Suspension and Revocation of Registered Status" ("Warning Letter") from Defendant. A true and correct copy of the Warning Letter is attached as Exhibit 2.

45.     This Warning Letter threatened actions that would be taken by Defendant if CCP failed to comply with her demand for Plaintiff's unredacted Schedule B. *See* Cal. Gov. Code § 12591.1(b)(3) (2014) (granting the Attorney General power to issue cease-and-desist orders "whenever the Attorney General finds that any entity . . . has committed an act that would constitute a violation of . . . an order issued by the Attorney General, including,

but not limited to . . . fail[ure] to file a financial report, or [filing] an incomplete financial report"); Cal. Gov. Code § 12591.1(c) (requiring that Attorney General provide notice via certified mail at least five days before imposing a penalty against a noncompliant charity).

46.     First, the Warning Letter stated that "[t]he California Franchise Tax Board will be notified to disallow the tax exemption of" CCP, "at which point the organization will be treated as a taxable corporation . . . and may be subject to the minimum tax penalty." Warning Letter at 1.

47.     Second, the Warning Letter informed Plaintiff that "[l]ate fees will be imposed by the Registry of Charitable Trusts for each month or partial month for which the report(s) are delinquent. Directors, trustees, officers and return preparers responsible for failure to timely file these reports are **also personally liable** for payment of all late fees." *Id.* (bold in original); *see* Cal. Gov. Code § 12591.1(c) (vesting Attorney General with power to "impose a penalty on any person or entity" that she finds has failed to file a proper financial report).

48.     Third, the Warning Letter threatened that "the Attorney General **will suspend the registration** of the above-named entity." *Id.* at 2 (bold in original); *see* Cal. Gov. Code § 12591.1(d) ("If the Attorney General assesses penalties under this section, the Attorney General may suspend the registration of that person or entity… Registration shall be automatically suspended until the fine is paid and no registration shall be renewed until the fine is paid").

49.     While not listed in the Warning Letter, California also provides the Attorney General with power to "apply to a superior court of the State of California for relief, and the court may issue a temporary injunction or a permanent injunction to restrain violations of this chapter, appoint a receiver, order restitution or an accounting, or grant other relief as may be appropriate to ensure the due application of charitable funds. Those proceedings shall be brought in the name of the state." Cal. Gov. Code § 12591.1(f) (2014).

50.     Plaintiff's most recent filing of the Annual Registration Renewal Fee Report was on December 11, 2015.

51.   Presently lacking injunctive relief against the Attorney General's demands, the Center for Competitive Politics has ceased soliciting contributions within the state of California.

*The Attorney General's Demand for Schedule B Information Infringes Upon the Freedom of Association.*

52.   An undisturbed line of U.S. Supreme Court precedent protects the privacy of contributors to non-partisan, nonprofit corporations against invasion by state officials. *See, e.g., NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958); *Bates v. City of Little Rock*, 361 U.S. 516 (1960); *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963).

53.   The Supreme Court has repeatedly held that disclosure of such lists unconstitutionally burdens the freedom of association. In 1958, a unanimous Court observed that "[i]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute [an] effective . . . restraint on freedom of association." *NAACP*, 357 U.S. at 462.

54.   It is "immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the effect of curtailing

the freedom to associate is subject to the closest scrutiny." *NAACP*, 357 U.S. at 460-461.

55.     The Supreme Court has also blocked the use of state power to obtain the names and addresses of contributors to a nonprofit corporation in order "to determine whether petitioner was conducting intrastate business in violation of the Alabama foreign corporation registration statute" or as "an adjunct of their power to impose occupational license taxes." *NAACP*, 357 U.S. at 464; *Bates*, 361 U.S. at 523.

56.     Thus, for nearly 60 years, it has been settled that "regulatory measures…no matter how sophisticated, cannot be employed in purpose or in effect to stifle, penalize, or curb the exercise of First Amendment rights." *Louisiana ex rel. Gremillion v. NAACP*, 366 U.S. 293, 297 (1961).

57.     If the Attorney General's efforts are carried out, Plaintiff and its supporters will suffer such an injury.

*The Attorney General's Disclosure Scheme is a Content-Based Restriction on Charitable Solicitation.*

58.     "Content-based laws—those that target speech based upon its communicative content—are presumptively unconstitutional and

may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015).

59.     "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed" including where speech is regulated based upon "its function or purpose . . . " *Reed*, 135 S. Ct. at 2227.

60.     "Thus, a speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Id.* at 2230.

61.     The Attorney General's Schedule B demand is a precondition for any person wishing to engage in the topic of charitable solicitation—which is itself a form of First Amendment protected speech. *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 798 (applying strict scrutiny to law restrictive of charitable solicitation); *Bd. of Trs. of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474 (1989) ("conducting fundraising for charitable organizations…[is] fully protected speech); *Gaudiya Vaishnava Soc'y v. San Francisco*, 952 F.2d 1059, 1063-1064 (9th Cir. 1991) (same).

62.     The Attorney General's content-based restriction on Plaintiff's charitable solicitation speech is not tailored to her interest in the prevention and prosecution of charitable solicitation fraud, and accordingly fails strict scrutiny.

*The Attorney General's Dragnet Demand for Donor Information Constitutes an Unconstitutional Search and Seizure and Violates the Fourth Amendment.*

63.     The Fourth Amendment requires a role for the judiciary in supervising subpoenas and warrants. This protection is a vital check on government power.

64.     The Attorney General is empowered to conduct compliance audits or subpoena donor information as part of an investigation into violations of California law. These tools are available to her if a charity's annual filing demonstrates a particularized suspicion of wrongdoing. *See* Cal. Gov. Code § 12588 ("[t]he Attorney General may investigate transactions and relations of corporations and trustees subject to this article…").

65.     Upon information and belief, the application of these particularized approaches is sufficient to vindicate the Attorney General's law enforcement interests and is, in fact, the means by

which the Attorney General actually conducts her investigations, rendering her asserted interest in obtaining CCP's Schedule B illusory. *AFPF* at 10 ("The record before the Court lacks even a single, concrete instance in which pre-investigation collection of a Schedule B did anything to advance the Attorney General's investigative, regulatory or enforcement efforts").

66.     The Attorney General's disclosure mandate seeks private donor information from all charities operating in California without the judicial oversight that would exist if she, instead, issued individual administrative subpoenas for select donor information. *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2454 (2015*)* (noting the existence of administrative subpoenas, and determining that "[t]heir prevalence confirms what common sense alone would otherwise lead us to conclude: In most contexts, business owners can be afforded at least an opportunity to contest an administrative search's propriety without unduly compromising the government's ability to achieve its regulatory aims."); Cal. Gov. Code § 12589 (in the context of an investigation, rather than a pre-investigation dragnet, the Attorney General's administrative demands "shall

have the same force and effect as a subpoena and, upon application of the Attorney General, obedience to the order may be enforced by the Superior court [*sic*] in the county where the person receiving it resides or is found, in the same manner as though the notice were a subpoena. The court, after hearing, for cause, and upon application of any person aggrieved by the order, shall have the right to alter, amend, revise, suspend or postpone all or any part of its provisions").

67.     The Attorney General's dragnet regime, then, requires that "absent…exigent circumstances"—none of which apply to Plaintiff—the Attorney General "must…afford[]" the recipients of her delinquency letters "an opportunity to obtain precompliance review before a neutral decisionmaker." *Patel*, 135 S. Ct. at 2452.

68.     Because the Attorney General has not provided such an opportunity, her demand infringes upon the Constitution's provision that Plaintiff "be secure in [its]…papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

*Federal Law Protects the Names and Addresses of Plaintiff's
Contributors from Compelled Disclosure to State Officials*

69.    The Internal Revenue Code regulates the disclosure of confidential federal tax information, and it is the sole authority governing such information.

70.    The Code defines "[t]he term 'disclosure'" as "the making known to any person in any manner whatever a return or return information." 26 U.S.C. § 6103(b)(8) (2016).

71.    All nonprofit organizations, including § 501(c)(3) organizations, must annually file IRS Form 990.

72.    IRS Form 990 provides for the reporting of contributor names and addresses on Schedule B, Schedule of Contributors.

73.    The IRS mandates that the Schedule B filings of certain organizations, such as § 527 entities, available for public inspection. 26 U.S.C. § 6104(d)(1).

74.    Federal law, however, forbids public dissemination of unredacted Schedule B information for organizations registered under § 501(c). 26 U.S.C. § 6104(d)(3)(A) (protecting against "the disclosure of the name and address of any contributor to the organization.").

75.     There is an exception to this blanket ban: when requested by a state official, such as the Attorney General, the IRS may disclose "returns and return information of any organization described in § 501(c) . . . for the purpose of, and only to the extent necessary in, the administration of State laws regulating the solicitation or administration of the charitable funds or charitable assets of such organizations." 26 U.S.C. § 6104(c)(3).

76.     Even this narrow exception is explicitly cabined: state officials are not permitted to obtain the Schedule B of "organizations described in paragraph (1) or (3)" of § 501(c). 26 U.S.C. § 6104(c)(3).

77.     Consequently, federal law specifically prohibits state officials, including Defendant, from seeking or obtaining the unredacted Schedule B of Plaintiff, a § 501(c)(3) organization.

## COUNT I – U.S. CONST AMENDS. I, XIV

78.     Plaintiff repeats, realleges, and incorporates the allegations in paragraphs 1-77.

79.     By compelling the disclosure of the names and addresses of Plaintiff's contributors, Defendant will unlawfully and substantially deprive Plaintiff and its supporters of the free

association rights secured by the First Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

80.     Moreover, by doing so as a predicate to Plaintiff's ability to lawfully speak about a topic or subject matter—namely charitable solicitation, Defendant will unlawfully and substantially deprive Plaintiff of its free speech rights secured by the First Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

81.     Despite her assurances to the contrary, including a sworn statement by the then-Registrar of Charitable Trusts before this Court, Defendant has been unable or unwilling to ensure that "the [S]chedule B records a[re] confidential records, accessible to in-house staff only." Foley Decl. at 3.

82.     Plaintiff and its supporters have no adequate remedy at law to avert this harm. Plaintiff is entitled to a declaratory judgment and injunctive relief prohibiting the Defendant from demanding its Schedule B filings.

83.     Plaintiff is further entitled to nominal damages.

COUNT II – U.S. CONST. AMENDS. IV, XIV

84.     Plaintiff repeats, realleges, and incorporates the allegations in paragraphs 1-83.

85.     By compelling the disclosure of the names and addresses of Plaintiff's contributors with the force of a subpoena, but without providing an opportunity for proper precompliance review, Defendant will unlawfully and substantially deprive Plaintiff of its Fourth Amendment protections against unreasonable searches and seizures, in violation of 42 U.S.C. § 1983. *City of Los Angeles v. Patel*, 135 S. Ct. 2443 (2015) (finding that lack of precompliance review for an administrative subpoena violates the Fourth Amendment).

86.     Plaintiff has no adequate remedy at law to avert this harm. Plaintiff is entitled to a declaratory judgment and injunctive relief prohibiting the Defendant from demanding its Schedule B filings.

87.     Plaintiff is further entitled to nominal damages.

COUNT III – FEDERAL PREEMPTION

88.     Plaintiff repeats, realleges, and incorporates the allegations in paragraphs 1-87.

89.     Congress has, pursuant to its authority under U.S. Const. art. I, sec. 8, barred state officials from demanding the names and addresses of contributors to entities, like Plaintiff, organized under § 501(c)(3) of the Internal Revenue Code. 26 U.S.C. § 6104(d)(3)(A).

90.     The Attorney General's attempts to circumvent Congress's express requirement that these forms go only to the IRS. This violates a duly enacted Federal statute and is thus preempted by the Supremacy Clause, U.S. Const. art. VI, cl. 2, insofar as she seeks to compel Plaintiff to turn over its contributors' names and addresses.

91.     Plaintiff and its supporters have no adequate remedy at law to avert the harm from Defendant's conduct. Plaintiff is entitled to a declaratory judgment and injunctive relief prohibiting the Defendant from demanding its unredacted Schedule B filings.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests judgment be entered in its favor and against Defendant as follows:

1. An order permanently enjoining Defendant, her officers, agents, servants, employees, and all persons in active concert or

participation with them, from taking any action to enforce, implement, or otherwise achieve the Attorney General's effort to obtain the names and addresses of Plaintiff's contributors, as described in paragraphs 5-51;

2. A judgment declaring that the Attorney General's effort, as described in paragraphs 5-51, to obtain the names and addresses of Plaintiff's contributors is preempted by the Supremacy Clause as a violation of federal law and is null and void;

3. A judgment declaring that the Attorney General's effort to obtain the names and addresses of Plaintiff's contributors, as described in paragraphs 5-51, violates the First and Fourteenth Amendments and is null and void;

4. A judgment declaring that the Attorney General's effort to obtain the names and addresses of Plaintiff's contributors, as described in paragraphs 5-51, violates the Fourth and Fourteenth Amendments and is null and void;

5. An award to Plaintiff of its reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

6. An award of nominal damages; and

7. Granting Plaintiff such additional or different relief as the Court deems just and proper.

Dated: August 12, 2016               Respectfully submitted,

By:   /s/ Allen Dickerson

Allen Dickerson*                          Alan Gura, Cal. Bar No. 178,221
Zac Morgan**                              Gura PLLC
Center for Competitive Politics           916 Prince Street, Suite 107
124 S. West Street, Suite 201             Alexandria, VA 22314
Alexandria VA 22314                       703.997.7665/F: 703.997.7665
703.894.6800/F: 703.894.6811             alan@gurapllc.com
adickerson@campaignfreedom.org


*Admitted *pro hac vice.*
**Application for admission *pro hac vice* pending