Alan Gura, Calif. Bar No. 178,221
Gura PLLC
916 Prince Street, Suite 107
Alexandria, VA 22314
703.835.9085
alan@gurapllc.com

Allen Dickerson*
Zac Morgan**
Center for Competitive Politics
124 S. West St., Suite 201
Alexandria, VA 22314
703.894.6800/F: 703.894.6811
adickerson@campaignfreedom.org

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CENTER FOR COMPETITIVE POLITICS, | ) | Case No. 14-636 |
| Plaintiff, | ) | |
| v. | ) | BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY RELIEF |
| | ) | |
| KAMALA HARRIS, in her official capacity as Attorney General of the State of California, | ) | Date:  October 6, 2016 |
| | ) | Time: 2:00 p.m. |
| | ) | Dept:  7, 14th Floor |
| Defendant. | ) | Judge: Morrison C. England, Jr. |
| | ) | Trial Date: None |
| | ) | Action Filed: March 7, 2014 |

## TABLE OF CONTENTS

Table of Authorities ............................................................................................... ii

Introduction.............................................................................................................1

Background of Case .................................................................................................2

Standard for Injunctive Relief..................................................................................5

Argument .................................................................................................................6

    I.      Plaintiff Has Demonstrated "Serious Questions" Going To The Merits ...............6

        A.  Under Ninth Circuit Precedent, The Attorney General's Disclosure
            Program Cannot Survive Exacting Scrutiny .................................................6

        B.  Content-Based Restrictions On Charitable Solicitation Are Heavily
            Disfavored And Subject to Strict Scrutiny...................................................8

        C.  Even If Characterized As An Administrative Search, The Attorney
            General's Program Is Unreasonable Under The Fourth Amendment...................10

        D.  The Attorney General's Policy May Be Subject To The Doctrine
            Of Nonmutual Offensive Issue Preclusion ........................................... 14

    II.     Plaintiff Meets The Remaining Preliminary Injunction Factors...........................17

Conclusion ............................................................................................................18

**TABLE OF AUTHORITIES**

**CASES**

*All. for the Wild Rockies v. Cottrell*,
    632 F.2d 1127 (9th Cir. 2011) ........................................................16

*Am. for Prosperity Found. v. Harris*,
    809 F.3d 536 (9th Cir. 2015) .................................................6, 7, 10

*Am. for Prosperity Found. v. Harris*,
    2016 U.S. Dist. LEXIS 53679 (C.D. Cal. Apr. 21, 2016) ...........2, 4, 5, 7, 17

*Arizona v. United States*,
    641 F.3d 339 (9th Cir. 2011) ........................................................17

*Balelo v. Baldridge*,
    706 F.2d 937 (9th Cir. 1983) ........................................................14

*Bd. of Trs.of the State Univ. of N.Y. v. Fox*,
    492 U.S. 469 (1989) ..............................................................9, 13

*Benjamin v. Coughlin*,
    905 F.2d 571 (2d Cir. 1990)...........................................................16

*Buckley v. Valeo*,
    424 U.S. 1 (1976)..................................................................6, 7

*Ctr. for Competitive Politics v. Harris*,
    784 F.3d 1307 (9th Cir. 2015) ..............................................1, 3, 6, 7, 11

*Ctr. for Competitive Politics v. Harris*,
    2014 U.S. Dist. LEXIS 66512 (E.D. Cal. May 14, 2014)...........................1, 3

*City of Ladue v. Gilleo*,
    512 U.S. 43 (1994)..................................................................9

*City of Los Angeles v. Patel*,
    135 S. Ct. 2443 (2015)...................................................11, 12, 14

*Coeur D'Alene Tribe of Idaho v. Hammond*,
    384 F.3d 674 (9th Cir. 2004) ........................................................15

*Colonnade Corp. v. United States*,
    397 U.S. 72 (1970)..................................................................13

*Donovan v. Dewey*
    452 U.S. 594 (1981)...................................................................................12

*Elrod v. Burns*,
    427 U.S. 347 (1976)...................................................................................17

*Gaudiya Vaishnava Soc'y v. San Francisco*,
    952 F.2d 1059 (9th Cir. 1991) .............................................................9, 17

*Gordon v. Holder*,
    721 F.3d 638 (D.C. Cir. 2013) ................................................................17

*Helene Curtis v. Assessment Appeals Bd.*,
    76 Cal. App. 4th 124 (Cal. Ct. App. 1999) ...................................................15

*Hercules Carriers, Inc. v. Florida*,
    768 F.2d 1558 (11th Cir. 1985) ................................................................16

*Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*,
    425 F.3d 708, 714 (9th Cir. 2005) .............................................................15

*K.G. v. Meredith*,
    204 Cal. App. 4th 164, 172 (Cal. Ct. App. 2012) .........................................16

*Marshall v. Barlow's Inc.*,
    436 U.S. 307 (1978)..........................................................................10, 12

*NAACP ex rel. Patterson v. Ala.*
    357 U.S. 449 (1958).......................................................................1, 6, 13

*N.Y. v. Burger*,
    482 U.S. 691 (1987)..........................................................................11, 12

*Norton v. City of Springfield*,
    806 F.3d 441 (7th Cir. 2012) .......................................................................8

*Patel v. City of Los Angeles*,
    738 F.3d 1058 (9th Cir. 2013) ...................................................................10

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) ...................................................................15

*ProtectMarriage.com – Yes on 8 v. Bowen*,
    752 F.3d 827 (9th Cir. 2014) .....................................................................17

*Reed v. Town of Gilbert*,
        135 S. Ct. 2218 (2015)..................................................................2, 8, 9

*Reich v. Mont. Sulphur & Chem. Co.*,
        32 F.3d 440 (9th Cir. 1994) ...........................................................12

*Resolution Trust Corp. v. Keating*,
        186 F.3d 1110 (9th Cir. 1999) .......................................................15

*Sarver v. Chartier*,
        813 F.3d 891 (9th Cir. 2016) ......................................................9-10

*SpeechNow.org v. FEC*,
        599 F.3d 686 (D.C. Cir. 2010) ........................................................7

*States v. United Cook Inlet Drift Ass'n*,
        895 P.2d 947, 952 (Alaska 1995).....................................................16

*Stokwitz v. United States*,
        831 F.2d 893 (9th Cir. 1987) ............................................................2

*Tucson Woman's Clinic v. Eden*,
        371 F.3d 1173 (9th Cir. 2004) .......................................................13

*United States v. Argent Chem. Lab.*,
        93 F.3d 572 (9th Cir. 1996) .....................................................13, 14

*United States v. Aukai*,
        497 F.3d 955 (9th Cir. 2004) ..........................................................12

*United States v. Bulacan*,
        156 F.3d 963 (9th Cir. 1998) ..........................................................14

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
        971 F.2d 244 (9th Cir. 1992) .....................................................3, 14

*United States v. Mendoza*,
        464 U.S. 154 (1984)................................................................15, 16

*United States v. Swisher*,
        811 F.3d 299 (9th Cir. 2016) ......................................................8, 9

*Williams-Yulee v. The Florida Bar*,
        135 S. Ct. 1656 (2015)....................................................................9

**CONSTITUTIONAL PROVISIONS AND STATUTES**

26 U.S.C. § 6104(d)(3)(A) .........................................................................10

Cal. Gov't Code § 12581 ............................................................................8

Cal. Gov't Code § 12588 ..........................................................................11

Cal. Gov't Code § 12589 ..........................................................................11

Cal. Gov't Code § 12591.1(e) ...................................................................11

11 Code of Calif. Regs. § 310(b) ...........................................................5, 7

11 Code of Calif. Regs. § 999.6(d) ..........................................................11

Ga. Code Ann. § 43-17-5(b)(4) .................................................................13

Haw. Rev. Stat. § 467B-6.5(a) ..................................................................13

Kan. Stat. § 17-1763(b)(15) ......................................................................13

Ky. Rev. Stat. Ann. § 367.657(1) ..............................................................13

**OTHER AUTHORITIES**

Br. of *Amici Curiae* States of Ariz., Mich., and S.C.,
         *Ctr. for Competitive Politics*, No. 15-152 (2015) .........................................13

## INTRODUCTION

From 2008 until last year, Plaintiff Center for Competitive Politics ("CCP") solicited charitable contributions in California. CCP is a § 501(c)(3) organization dedicated to promoting and defending, through education, strategic litigation, communication, training, and research, the political rights protected by the First Amendment.[1] Although CCP has relied on contributions from Californians to fund its mission, CCP has stopped soliciting support in this state because the Attorney General permits such fundraising only on condition that charities provide unredacted Schedule Bs to her office. As Schedule B is an addendum to the Internal Revenue Service's Form 990 that lists the names and addresses of CCP's contributors, the Attorney General's demand threatens the right of CCP's supporters "to pursue their lawful private interests privately and to associate freely with others in so doing." *NAACP ex rel. Patterson v. Ala.*, 357 U.S. 449, 466 (1958).

Acting upon the Attorney General's assurances that her dragnet is "a critical enforcement tool" and that CCP's unredacted Schedule B would be "kept confidential and…used exclusively for law enforcement purposes," this Court previously found that CCP was not entitled to a preliminary injunction. Def. Opp'n Br. at 1; *Ctr. for Competitive Politics v. Harris*, 2014 U.S. Dist. LEXIS 66512 (E.D. Cal. May 14, 2014). On appeal, the Ninth Circuit, likewise relying on the Attorney General's promise that Schedule B "information is necessary to determine whether a charity is actually engaged in a charitable purpose, or is instead violating California law by engaging in self-dealing, improper loans, or other unfair business practices," also denied relief. *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1311 (9th Cir. 2015).

---

[1] As required under §501(c)(3), CCP does not engage in political activity.

As it turns out, those statements by the Attorney General were false. *Am. for Prosperity Found. v. Harris*, 2016 U.S. Dist. LEXIS 53679 (C.D. Cal. Apr. 21, 2016). The Attorney General does not use "the information contained in the IRS Form 990 and Schedule B…to determine, often without conducting an audit, whether an organization has violated the law, including laws against self dealing, improper loans, interested persons, or illegal or unfair business practices." Def. Opp'n Br. at 13-14 (internal citations to California law omitted). Nor does the Attorney General "maintain[] the [S]chedule B records as confidential records, accessible to in-house staff only." *Id*. at 5.

These revelations suggest that this Court was misled in making its previous ruling.[2] They also demonstrate that, even under current Ninth Circuit precedent, the Attorney General's regime cannot survive exacting scrutiny as required by the First Amendment. Furthermore, under a recent Supreme Court ruling, her program constitutes an improper content-based restriction on speech, and is consequently subject to strict scrutiny. *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). Finally, her policy violates the Fourth Amendment's requirement that administrative demands functioning with "the same force as a subpoena" allow targeted groups to seek precompliance review before a neutral magistrate.[3] Def. Opp'n at 4.

## BACKGROUND OF CASE

When CCP first filed this action, in March of 2014, little was known about the Attorney General's Schedule B disclosure program. No one outside her office knew when the program

---

[2] Counsel for Plaintiff conferred by telephone with counsel for Defendant on August 11, and the Attorney General has indicated that she will oppose the motion.

[3] Plaintiff does not waive or withdraw its contention that federal law preempts the Attorney General's demand. However, given the Ninth Circuit's holding to the contrary, relying upon *Stokwitz v. United States*, 831 F.2d 893 (9th Cir. 1987), Plaintiff merely preserves this argument for future consideration, if necessary.

started, what the Attorney General used Schedule B for, or how she kept Schedule B information on file. All that Plaintiff knew was that, although it had for many years been approved for Registry membership despite submitting a redacted, public version of its Schedule B, a person working at the Registry of Charitable Trusts ("A.B.") signed a letter asserting that CCP's last annual filing with the Registry was "incomplete because the copy of Schedule B, Schedule of Contributors [did] not include the names and addresses of contributors." ECF No. 1-1 (emphasis removed).

The Attorney General then suddenly claimed that Schedule B information was essential in her fight against fraud. She also provided a sworn statement, made on penalty of perjury, by the then-Registrar of Charitable Trusts, Kevis Foley, the person "responsible for overseeing the database" of Schedule B information. ECF No. 10-8 at 2. Ms. Foley's sworn statement, which she claimed was made with "personal knowledge," stated that "the Schedule B filed by public charities…has always been treated as a confidential document….accessible to in-house staff only." ECF No. 10-8 at 2-3. Both this Court and the Court of Appeals relied upon the Attorney General's representations. *Ctr. for Competitive Politics v. Harris*, 2014 U.S. Dist. LEXIS 66512 at 21 (E.D. Cal. 2014) ("Defendant points out the requested information allows her to determine whether an organization has violated the law…[and] the Registry is kept confidential and Plaintiff's Schedule B would not be disclosed publically") (quotation marks omitted); *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1311 (9th Cir. 2015). At the time, such deference appeared reasonable.

Now, however, while the Attorney General's claims have not been tested here, they have been subject to extensive discovery and a six-day bench trial before a sister court in this circuit. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (permitting judicial "notice of proceedings in other courts…if those proceedings have a direct relation to matters at issue") (internal citation and quotation marks omitted). In that

case, the Americans for Prosperity Foundation, a §501(c)(3) organization and member of the Registry since 2001, filed a substantially similar lawsuit. *Am. for Prosperity Found. v. Harris*, 2016 U.S. Dist. LEXIS 53679 at 3 (C.D. Cal. Apr. 21, 2016) ("*AFPF*"). The *AFPF* court made findings of fact that are, to be charitable, in dramatic tension with the representations the Attorney General has made to this Court and the Court of Appeals.

"First, over the course of trial, the Attorney General was hard pressed to find a single witness who could corroborate the necessity of Schedule B forms in conjunction with [her] office's investigations." *AFPF* at 5. The current Registrar of Charitable Trusts, David Eller, admitted that "the Attorney General does not use the Schedule B in its day-to-day business." *Id*. at 6.

"As for the investigative unit of the Charitable Trusts Section, trial testimony confirmed that auditors and attorneys seldom use Schedule B…Steven Bauman, a supervising investigative auditor for the Attorney General, testified that out of the approximately 540 investigations conducted over the past *ten years* in the Charitable Trusts Sections, only five instances involved the use of a Schedule B….as to those five investigations identified, the Attorney General's investigators could not recall whether they had unredacted Schedule Bs on file before initiating the investigation." *Id*. at 7 (emphasis supplied). In any case, in each of those five instances, "the relevant information [the Schedule B] contained could have been obtained from other sources." *Id*.

As to the Attorney General's claim that the privacy of donor data is carefully protected, the trial court found that "the Attorney General has systematically failed to maintain the confidentiality of Schedule B forms." *Id*. at 15. In contrast to her sworn statement before this court, Kevis Foley testified that protecting donor privacy was "'very tedious, very boring work'" with "'room for errors to be made.'" *Id*. at 16 (quoting Foley Dep.). A non-exhaustive search of the Registry's

public website revealed at least "1,778 confidential Schedule Bs," including that of "Planned Parenthood Affiliates of California…which included all the names and addresses of hundreds of donors" to that organization. *Id*. at 16-17.

Nevertheless, CCP and thousands of other nonprofits are still forced to disclose their donor lists to the Attorney General, from whom "it cannot be clawed back." *Id*. at 20. Indeed, during the course of this litigation, CCP was presented with a second demand letter from the Registry of Charitable Trusts. That letter threatened concrete penalties if CCP did not turn over its donor list: suspension from the Registry, treatment as a taxable corporation by the California Franchise Tax Board, and the imposition of late fees, for which members of CCP's board would be personally liable. Am. Complaint at 13-15, ¶¶ 44-49.

The Attorney General has promulgated a new regulation, which purports to ensure that Schedule B information will remain confidential. 11 Code of Calif. Regs. § 310(b). But there is no reason to believe that the inadvertent disclosures discovered in *AFPF* will stop. There is no indication that she has adopted proper security measures, trained her staff in these measures, or disciplined those responsible for previous privacy breaches. The new regulation, then, is no more valuable than Ms. Foley's 2014 declaration before this Court.

Accordingly, rather than reveal to the Attorney General—and possibly to anyone with a working Internet connection—the names and addresses of its donors, Plaintiff has ceased soliciting contributions within the State of California.

### STANDARD FOR INJUNCTIVE RELIEF

Given the new allegations in its Amended Complaint, CCP moves again for preliminary relief. In this circuit, "[a] court may grant a preliminary injunction when a party shows 'serious questions' going to the merits of its claim[s], a balance of hardships that tips sharply in its favor,

a likelihood of irreparable harm and that an injunction is in the public interest." *Am. for Prosperity Found. v. Harris*, 809 F.3d 536, 539 (9th Cir. 2015) ("*AFPF II*") (citation omitted).

ARGUMENT

## I.   Plaintiff Has Demonstrated "Serious Questions" Going To The Merits.

### A.   Under Ninth Circuit Precedent, The Attorney General's Disclosure Program Cannot Survive Exacting Scrutiny.

This court is bound by the Ninth Circuit's decisions in *Center for Competitive Politics v. Harris*, 784 F.3d 1307 (9th Cir. 2015) and *AFPF II*.[4] Combined, these two cases set the test for determining whether a compulsory disclosure regime unconstitutionally intrudes upon associational liberties.

First, this Court must determine what sort of disclosure is at issue. The Ninth Circuit has stated that the Attorney General's interest only extends to nonpublic disclosure—that is the collection, but not public revelation, of donor lists. *AFPF II*, 809 F.3d at 538 ("The Attorney General does not assert any state interest in *public* disclosure of Schedule B forms") (emphasis in original). The Ninth Circuit, following this understanding, clawed back earlier *dicta* in its denial of an injunction in this case, noted that the California Public Records Act "might require public inspection" of Form 990 Schedule B, and entered an injunction against any such public inspection.

---

[4] Plaintiff maintains the Ninth Circuit's exacting scrutiny analysis is broadly incorrect. While claiming to apply "exacting scrutiny," 784 F.3d at 1312, the Court of Appeals in fact applied a weakened form of rational basis, permitting the Attorney General to demand CCP's Schedule B upon the mere invocation of a governmental interest, and without requiring any evidence of tailoring. Moreover, the Ninth Circuit erred in claiming, contrary to *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958), and the facial ruling in *Buckley v. Valeo*, 424 U.S. 1 (1976) (*per curiam*), that the disclosure of donor information to the government in and of itself imposes no First Amendment injury. 784 F.3d at 1312-1314. CCP preserves the right to contest those rulings before a higher court.

*Id.* at 542.[5] At the very least, *AFPF II* should control and an injunction ought to issue against public disclosure, intentional or otherwise, of unredacted Schedule B information, with appropriate safeguards.

As to the supposed "nonpublic" disclosure demanded by the Attorney General, the Ninth Circuit has made clear that such "compelled disclosure triggers exacting scrutiny—'the strict test established by *NAACP v. Alabama*.'" *Ctr. for Competitive Politics*, 784 F.3d at 1313 (citation omitted). Thus, there must "be a relevant correlation or substantial relationship between the governmental interest and the information required to be disclosed." *Buckley v. Valeo*, 424 U.S. 1, 64-65 (1976) (*per curiam*) (internal citation and quotation marks omitted).

The Attorney General's professed interest is in punishing fraudulent charities. But it is now abundantly plain that there is reason to doubt that assertion, and to instead believe that the Attorney General has never needed a charity's donor list in order to carry out her statutory duties. *AFPF*, 2016 U.S. Dist. LEXIS 53679 at 6 ("…this Court…was left unconvinced that the Attorney General actually needs Schedule B forms to conduct its investigations"). Thus, there is no relevant correlation or substantial relationship between the Attorney General's demand for unredacted Schedule B information and her interest in prosecuting charity fraud. Meanwhile, CCP is at both a credible risk of having its Schedule B information publicly distributed, and, to protect the privacy of its supporters, has ceased conducting constitutionally protected charitable activity within California. Balancing these concrete harms against the government's weak interest, Plaintiff ought to prevail for the simple reason that "something…outweighs nothing every time." *SpeechNow.org v. FEC*, 599 F.3d 686, 695 (D.C. Cir. 2010) (*en banc*) (applying exacting scrutiny) (internal citation

---

[5] The promulgation of 11 Code of Calif. Regs. § 310(b) also does nothing to prevent disclosure of CCP's donor list via judicial ruling under the Public Records Act.

and quotation marks omitted, ellipsis in original). Accordingly, a preliminary injunction is appropriate.

**B. Content-Based Restrictions On Charitable Solicitation Are Heavily Disfavored And Subject To Strict Scrutiny.**

By her own admission, the Attorney General demands CCP's unredacted Schedule B because Plaintiff seeks to engage in speech soliciting charitable contributions. Def. Opp'n at 4. If a charity fails to cough up the confidential tax document, it is *prohibited* from speaking with Californians on that topic. The Attorney General does not impose any similar obligation upon organizations engaged in political campaign activity, religious ministry, issue advocacy, or—to the best of Plaintiff's knowledge—any other type of speech.

Since the filing of this case, the Supreme Court has clarified that even benign efforts to discriminate against speech on the basis of its content is subject to strict scrutiny. *United States v. Swisher*, 811 F.3d 299, 313 (9th Cir. 2016) ("The Supreme Court has recently provided authoritative direction for differentiating between content-neutral and content-based enactments"); *Reed*, 135 S. Ct. at 2227. The Attorney General's program, which "define[s] regulated speech by particular subject matter" is just such a content-based restriction on speech. *Reed*, 135 S. Ct. at 2227. This is the case even if the Attorney General's program "does not target viewpoints within that subject matter;" the mere act of "singl[ing] out specific subject matter for differential treatment" triggers strict scrutiny. *Id.* at 2228, 2230; *also id.* at 2227 ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed…"); *see also* Cal. Gov't Code § 12581.

The Court did not mince words. *Norton v. City of Springfield*, 806 F.3d 411, 412 (7th Cir. 2015) ("The majority opinion in *Reed* effectively abolishes any distinction between content regulation and subject-matter regulation"). Even if were conceded that that the Attorney General's

program is a "perfectly rational" one, and Plaintiff does not so concede, "a clear and firm rule governing content neutrality is an essential means of protecting the freedom of speech, even if laws that might seem 'entirely reasonable' will sometimes be 'struck down because of their content-based nature.'" *Reed*, 135 S. Ct. at 2231 (citing *City of Ladue v. Gilleo*, 512 U.S. 43, 60 (1994) (O'Connor, J., concurring). Here, the Attorney General puts one category of speech— charitable solicitation—at a disadvantage to all other types.

Of course, even after *Reed*, there remain exceptions to the application of strict scrutiny. But these exceptions only apply to speech without any social value. *Swisher*, 811 F.3d at 313-314. These include only a "few historic and traditional categories," such as prohibitions against obscenity, child pornography, actual fraud, true threats, or additional "statutes and common-law doctrines" that stigmatize the "intentional infliction of emotional distress, lying to a government official, false claims of terrorist attacks" and the like. *Id*. at 313-314 (citation and quotation marks omitted).

But charitable solicitations *enhance* social welfare. Both the Supreme Court and the Ninth Circuit have recognized that "conducting fundraising for charitable organizations…[is] fully protected speech" that involves "the exercise of rights… vital to the maintenance of democratic institutions." *Bd. of Trs. of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474 (1989); *Williams-Yulee v. The Florida Bar*, 135 S. Ct. 1656, 1665 (2015) (citation and quotation marks omitted); *see also Gaudiya Vaishnava Soc'y v. San Francisco*, 952 F.2d 1059, 1063 (9th Cir. 1991).

As a categorical regulation of welfare-maximizing speech, the Attorney General's disclosure condition "is simply a content-based speech restriction. As such, it is presumptively unconstitutional, and cannot stand unless [she] can show a compelling state interest in preventing the defendants' speech," and that it is the least restrictive means of serving that interest. *Sarver v.*

*Chartier*, 813 F.3d 891, 905-906 (9th Cir. 2016). Here, there are certainly more narrowly-tailored means she could employ to serve her professed law enforcement interests, such as using a proper administrative subpoena process, merely requiring charities to report donors residing within her jurisdiction, or mandating that charities report the names and addresses of donors responsible for substantial in-kind contributions and/or those who have family members on the charity's payroll or board of directors.

Thus, the Attorney General's disclosure regime constitutes a content-based restriction on speech that is unlikely to survive strict scrutiny.

## C. Even If Characterized As An Administrative Search, The Attorney General's Program Is Unreasonable Under The Fourth Amendment.

A charity's donor records are generally, by federal statute and longstanding practice, kept private from third parties. Indeed, under existing law, charities are only required to share this record with the Internal Revenue Service[6] pursuant to a specific statute with a number of safeguards against inadvertent release, one of which is that the Treasury Secretary is specifically barred from providing those records to Defendant. 26 U.S.C. § 6104(d)(3)(A). In such instances, where records are presumed to be kept confidential from other parties, the Fourth Amendment works a "privacy-based" protection against the stockpiling of such documents without precompliance review. *Patel v. City of Los Angeles*, 738 F.3d 1058, 1061-1062 (9th Cir. 2013). While there are limited exceptions to this rule, none apply here.

The Fourth Amendment "protects against warrantless intrusions during civil as well as criminal investigations." *Marshall v. Barlow's Inc.*, 436 U.S. 307, 312 (1978). Here, however, the Attorney General claims to seek information from all organizations she regulates, pursuant to what

---

[6] CCP does not concede that the IRS may constitutionally obtain this information.

she describes as "her general subpoena power." *AFPF II*, 809 F.3d at 539 (internal citation and quotation marks omitted). This is not a program concerning particularized investigations, nor does the Attorney General provide for precompliance review of this general warrant by a neutral magistrate.[7] Cal. Gov't Code §§ 12588, 12589 (Attorney General's demands equivalent to subpoena only in context of *investigations*).

Accordingly, the Fourth Amendment's protections are even stronger here than in *Patel* or other cases requiring precompliance review in the context of particularized demands for information. *See N.Y. v. Burger*, 482 U.S. 691, 701 (1987) ("In *Marshall v. Barlow's, Inc.*, we…declined to find that warrantless inspections…of all businesses engaged in interstate commerce fell within the narrow focus of this doctrine") (emphasis removed). Nevertheless, even in the context of an investigation, "the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452 (2015).

Such precompliance review is essential in these circumstances, because it "alters the dynamic between the officer and the [party being]…searched, and reduces the risk [that]….these administrative searches are a pretext to harass." *Patel*, 135 S. Ct. at 2454; *Ctr. for Competitive Politics*, 784 F.3d at 1313 (noting the danger of government harassment via compelled disclosure regimes). California law presumably provides for state court review of true administrative subpoenas issued by the Attorney General, Cal. Gov't Code § 12589, but in this case, the Attorney General merely demands information from all charities, and if they do not comply, she unilaterally

---

[7] California law permits organizations actually sanctioned by the Attorney General, such as those suspended from the Registry, to obtain review of that sanction, but that is plainly not *precompliance* review. Cal. Gov't Code § 12591.1(e); *also* 11 Code of Calif. Regs. 999.6(d).

issues fines, orders that their tax status be altered, or suspends their ability to raise funds in California.[8]

There is, it should be said, a narrow exception to the precompliance review requirement. Such review is unnecessary when the target of the investigation is a member of a "closely regulated" industry. *Burger*, 482 U.S. at 701. In such industries, there is a "reduced expectation of privacy" that may vitiate the need for the State to obtain precompliance review. *Id*. But charities are not "closely regulated."

"Closely regulated" is a legal term of art, and merely because charities, like inns and hotels, have long been regulated by the State does not obviate the need for precompliance review. *Patel*, 135 S. Ct. at 2455. Nor does the general scope of a State's regulation override an entity's expectation of privacy. *Id*. (discussing ambit of general regulation of hotels). Rather, the "narrow exception" afforded to governments regarding closely regulated industries is predicated on the idea that there is something "inherent in the operation of [an entity that] poses a clear and significant risk to the public welfare." *Id*. at 2454-2455; *also United States v. Aukai*, 497 F.3d 955, 962 n.6 (9th Cir. 2004) (using example of "the present threat" of terrorist attacks to justify administrative searches at airports).[9] To that end, a qualifying industry must have a history of regulation such that "any person who chooses to enter such a business must already be aware" of the extent of the regulation. *Marshall*, 436 U.S. at 313. Here, California has never previously demanded donor

---

[8] Requiring precompliance review would not be arduous. The State has provided no evidence "suggesting that…[charities being investigated] would regularly refuse to cooperate." *Patel*, 135 S. Ct. at 2453; *Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440, 444 (9th Cir. 1994) ("The test for whether the courts should enforce such an administrative subpoena is well-established").

[9] Other examples include liquor distribution, mining, and firearms dealing. *Patel*, 135 S. Ct. at 2454 (collecting cases); *Dewey v. Donovan*, 452 U.S. 594, 602 (1981) (mining is "among the most hazardous [industries] in the country and that the poor health and safety record of this industry has significant deleterious effects on interstate commerce").

information, nor has it been required by 48 other states. Br. of *Amici Curiae* States of Ariz., Mich., and S.C. at 8, *Ctr. for Competitive Politics*, No. 15-152 (U.S. 2015) ("Not only do 48 states not require annual submission of unredacted Schedule Bs, 11 of those states do not require registration at all").[10] And while there is a government interest "in protecting the revenue against various types of fraud," *Colonnade Corp. v. United States*, 397 U.S. 72, 75 (1970), that may permit warrantless searches of closely regulated industries, there is no indication that charities, in and of themselves, pose such an acute threat.

Moreover, the Ninth Circuit has held that because "the theory behind the closely regulated industry exception is that persons engaging in such industries…have a diminished expectation of privacy," the exception "does not apply" when the information sought by the State is "grounded in a fundamental constitutional liberty." *Tucson Woman's Clinic v. Eden*, 371 F.3d 1173, 1192 (9th Cir. 2004) (striking down warrantless search regime targeted at abortion clinics). Here, the Attorney General threatens fundamental liberties. *Bd. of Trs. v. Fox*, 492 U.S. at 474 (noting protections for charitable solicitation); *NAACP,* 357 U.S. at 462 (nonprofit donor privacy protected by Constitution). This, in and of itself, counsels in favor of an independent check against her authority. *United States v. Argent Chem. Lab.*, 93 F.3d 572, 578 (9th Cir. 1996) ("Thus it is the invasion of privacy, not the particularity of the seizure, that is the relevant difference…").

But even assuming *arguendo* that charities are a closely regulated industry, the Attorney General still must show a substantial governmental interest, that the warrantless accumulation of

---

[10] Moreover, while California regulations state that the "Internal Revenue Service Form 990" must be filed with the Attorney General, many states have similar statutes and, nevertheless, do not require *unredacted* versions of that form. Ga. Code Ann. § 43-17-5(b)(4) (2016) ("a copy of the Form 990…which the organization filed for the previous taxable year"); Haw. Rev. Stat. § 467B-6.5(a) (2016) ("the annual report shall be a copy of that Form 990 or 990-EZ"); Kan. Stat. § 17-1763(b)(15) (2016) ("a copy of the federal income tax return"); Ky. Rev. Stat. Ann. § 367.657(1) (2016) ("…a copy of its most recent federal Form 990…").

data is "necessary to further the regulatory scheme," and "in terms of the certainty and regularity of its application, [the State] must provide a constitutionally adequate substitute for a warrant." *Patel*, 135 S. Ct. at 2456 (internal citation and quotation marks omitted). Even if the State's interest, discussed *supra*, is conceded, the necessity of warehousing donor data is in grave doubt. *United States v. Bulacan*, 156 F.3d 963, 967 (9th Cir. 1998) ("While administrative searches are an exception to the Fourth Amendment's warrant requirement, they are not an exception to the Fourth Amendment's standard of reasonableness").

Moreover, the Attorney General's Schedule B program fails to provide for a constitutionally adequate warrant substitute. Case law permitting such administrative searches has insisted that such substitutes cannot be merely inferred, because "administrative action raising constitutional questions must be explicitly authorized." *Balelo v. Baldridge*, 706 F.2d 937, 938 (9th Cir. 1983). It is not enough that the relevant California statute mentions Form 990, or that the Attorney General has a general power to demand documents during investigations. *Balelo*, 706 F.2d at 938 (considering a "general enabling statute," and rejecting argument "that Congress, without amending the statute, indicated its approval…" because "that approval is not sufficient evidence of *authorization*…") (emphasis supplied); *Argent Chem.*, 93 F.3d at 576 (no adequate substitute for warrant unless "[i]nspections are conducted with notice furnished at the time, and their scope is limited by statute").

Consequently, the Attorney General's demand likely constitutes an unreasonable search within the meaning of the Fourth Amendment.

### D. The Attorney General's Policy May Be Subject To The Doctrine Of Nonmutual Offensive Issue Preclusion.

While this Court may unquestionably take judicial notice of the *AFPF* proceedings, *Borneo*, 971 F.2d at 248, and that is sufficient for purposes of this motion, the Attorney General's loss in

that case raises questions of issue preclusion. In the Ninth Circuit, a party invoking nonmutual offensive issue preclusion must prove that "(1) the [Defendant] was afforded a full and fair opportunity to litigate the issues in the prior actions; (2) the issues were actually litigated and necessary to support the judgments; (3) the issues were decided against [Defendant] in final judgments; and (4) [the Defendant] was a party or in privity with a party in the prior proceedings." *Resolution Trust Corp. v. Keating,* 186 F.3d 1110, 1114 (9th Cir. 1999). Because the Attorney General has appealed *AFPF,* there is not yet a final judgment in that matter. Nevertheless, the district court's factual findings, which are all that CCP relies upon here, are subject to reversal only "for clear error," and the Court of Appeals "will defer" unless "based on the entire evidence, [it] is left with a definite and firm conviction that a mistake has been committed." *Pom Wonderful LLC v. Hubbard,* 775 F.3d 1118, 1123 (9th Cir. 2014) (internal quotation marks and citation omitted). Since many of the *AFPF* findings are direct quotes from officials of the Attorney General's office, such a reversal appears unlikely.

To be sure, the Supreme Court has held that nonmutual offensive collateral estoppel does not apply against the United States, *United States v. Mendoza,* 464 U.S. 154, 159-60 (1984), and the Ninth Circuit (though not the Supreme Court) has partially extended that doctrine to state agencies. *Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.,* 425 F.3d 708, 714 (9th Cir. 2005) (addressing *defensive* nonmutual collateral estoppel); *see also Coeur D'Alene Tribe of Idaho v. Hammond,* 384 F.3d 674, 689-90 (9th Cir. 2004) (applying *Mendoza* to nonmutual *offensive* estoppel against a state agency, but relying upon general state law). The California courts, to the extent they have given the question any thought, appear to concur. *Helene Curtis v. Assessment Appeals Bd.,* 76 Cal. App. 4th 124, 133 (Cal. Ct. App. 1999) (holding argument waived, but

nevertheless citing *Mendoza*); *K.G. v. Meredith,* 204 Cal. App. 4th 164, 172 n.9 (Cal. Ct. App. 2012).

But the Ninth Circuit does not appear to have discussed *offensive* collateral estoppel in an analogous context, and may be mistaken in any event. The *Mendoza* Court anchored its ruling, in large part, upon the advantage of "permitting several courts of appeals to explore a difficult question before [the Supreme Court] grants certiorari." 464 U.S. at 160. Plainly, that interest does not apply to the Attorney General of a single state, litigating in a single circuit. Similarly, *Mendoza* speaks of the unique role of the U.S. Solicitor General in "consider[ing] a variety of factors, such as the limited resources of the Government and the crowded dockets of the courts, before authorizing an appeal." *Id.* at 160-61. But the Attorney General has already chosen to appeal *AFPF,* rendering that point moot. Moreover, "attempt[s] to equate the functions of [a state's] Attorney General with those of the United States Solicitor General do not withstand scrutiny [because she] litigates in a single jurisdiction and is faced with a much smaller volume of litigation." *States v. United Cook Inlet Drift Ass'n,* 895 P.2d 947, 952 (Alaska 1995). Perhaps for these reasons, there is a split in authority as to the availability of nonmutual collateral estoppel against a state or local government. *Compare Hercules Carriers, Inc. v. Florida,* 768 F.2d 1558 (11th Cir. 1985) (no estoppel available against state) *with Benjamin v. Coughlin,* 905 F.2d 571 (2d Cir. 1990) (declining to extend *Mendoza* to state government).

Accordingly, Plaintiff respectfully submits that the Attorney General is subject to issue preclusion on questions going to the heart of this case, and Plaintiff consequently has an increased probability of ultimate success on the merits. Therefore, a preliminary injunction is appropriate. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-1132 (9th Cir. 2011) (discussing the Ninth Circuit's "'sliding scale' approach to preliminary injunctions").

**II. Plaintiff Meets The Remaining Preliminary Injunction Factors.**

The Attorney General's Schedule B program threatens First and Fourth Amendment freedoms, which "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.); *Arizona v. United States*, 641 F.3d 339, 366 (9th Cir. 2011), *aff'd in part, rev'd in part on other grounds*, 132 S. Ct. 2492 (2012) ("We have 'stated that an alleged constitutional infringement will often alone constitute irreparable harm'") (citation omitted). Indeed, CCP has already been denied the ability to engage in protected charitable solicitation in the wealthiest state in the Union, itself a First Amendment harm. *Guadiya Vaishnava Soc'y*, 952 F.2d at 1063 ("The Supreme Court has held that fund-raising for charitable organizations is fully protected speech") (citation omitted).

Moreover, once "donor information is disclosed, it cannot be clawed back," and, if the Registry's lax approach to confidentiality causes CCP contributor information to be spread on the Internet by third parties, courts can "no longer provide…effective relief." *AFPF*, 2016 U.S. Dist. LEXIS 53679 at 20; *ProtectMarriage.com – Yes on 8 v. Bowen*, 752 F.3d 827, 835 (9th Cir. 2014). In contrast, because the Attorney General "does not review Schedule Bs upon collection and virtually never uses them to investigate wrongdoing," the harm to CCP's constitutional liberties sharply balances in favor of enjoining the Attorney General. *AFPF*, 2016 U.S. Dist. LEXIS at 21.

Finally, the public interest plainly counsels in favor of an injunction. *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[E]nforcement of an unconstitutional law is always contrary to the public interest").

## CONCLUSION

For the foregoing reasons, a preliminary injunction ought to issue.

Dated: August 19, 2016   Respectfully submitted,

            By:  /s/ Allen Dickerson

Allen Dickerson*       Alan Gura, Cal. Bar No. 178,221
Zac Morgan**        Gura PLLC
Center for Competitive Politics  916 Prince Street, Suite 107
124 S. West Street, Suite 201   Alexandria, VA 22314
Alexandria VA 22314     703.997.7665/F: 703.997.7665
703.894.6800/F: 703.894.6811  alan@gurapllc.com
adickerson@campaignfreedom.org

*Admitted *pro hac vice*.
**Application for admission *pro hac vice* pending