1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  TAMAR PACHTER, State Bar No. 146083
   Supervising Deputy Attorney General
3  ALEXANDRA ROBERT GORDON, State Bar No. 207650
   KEVIN A. CALIA, State Bar No. 227406
4  Deputy Attorneys General
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 703-5509
6    Fax:  (415) 703-5480
     E-mail:  Alexandra.RobertGordon@doj.ca.gov
7  *Attorneys for Defendant Attorney General Harris*

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10                   SACRAMENTO DIVISION

11

12

| | |
|---|---|
| **CENTER FOR COMPETITIVE POLITICS,** | 2:14-cv-00636-MCE-DB |
| Plaintiff, | |
| v. | **DEFENDANT ATTORNEY GENERAL KAMALA D. HARRIS'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12 (b)(6)** |
| **KAMALA HARRIS, in her Official Capacity as Attorney General of the State of California,** | |
| Defendant. | Date:           October 6, 2016<br>Time:           2:00 p.m.<br>Courtroom:   7, 14th Floor<br>Judge:         Hon. Morrison C. England, Jr.<br>Trial Date:    None Set<br>Action Filed:  March 7, 2014 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 3

    I.     Relevant Law and Procedural History ................................................... 3

          A.    The Attorney General's Regulation of Tax-Exempt Charitable Organizations. .......................................................... 3

          B.    Procedural History ...................................................... 5

    II.    The Allegations of the Complaint ........................................................ 7

ARGUMENT ..................................................................................................................... 7

    I.     Legal Standard ...................................................................................... 7

    II.    The Complaint Fails to State a Claim as a Matter of Law ..................... 8

          A.    Plaintiff's First Amendment Associational Rights Claim Fails. ................ 9

          B.    Plaintiff's First Amendment Speech Claim Fails. ................... 15

          C.    Plaintiff's Fourth Amendment Claim Fails. ........................... 18

          D.    Plaintiff's Supremacy Clause Claim Fails. ............................. 19

          E.    Plaintiff is not Entitled to Relief Under 42 U.S.C. Section 1983. ............ 20

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

CASES

*ACLU v. Heller*
    378 F.3d 979 (9th Cir. 2004) ................................................................................... 17

*Americans for Prosperity Foundation v. Harris*
    809 F.3d 536 (9th Cir. 2015) ........................................................................... *passim*

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ..................................................................................... 8, 16, 18

*Bates v. Little Rock*
    361 U.S. 516 (1960) ............................................................................................... 11

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ................................................................................................. 8

*Brock v. Local 373, Plumbers Int'l Union of America*
    860 F.2d 346 (9th Cir. 1988) ................................................................................. 10

*Brown v. Socialist Workers '74 Campaign*
    459 U.S. 87 (1982) ..................................................................................... 11, 12, 15

*Buckley v. American Constitutional Law Foundation, Inc.*
    525 U.S. 182 (1999) ............................................................................................... 17

*Buckley v. Valeo*
    424 U.S. 1 (1976) ....................................................................................... 10, 12, 17

*Cal. Pro-Life Council, Inc. v. Getman*
    328 F.3d 1088 (9th Cir. 2003) ............................................................................... 17

*Caplan v. Fellheimer Eichen Braverman & Kaskey*
    68 F.3d 828 (3d Cir. 1995) .................................................................................... 11

*Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby*
    958 F.2d 941 (9th Cir. 1992) ................................................................................... 8

*Citizens United v. Fed. Election Comm'n*
    558 U.S. 310 (2010) ................................................................................. 10, 15, 16, 17

*Citizens United v. Schneiderman*
    No. 14-CV-3703 (SHS), 2016 WL 4521627 (S.D.N.Y. Aug. 29, 2016) ...................... 9, 11, 13

*Ctr. for Competitive Politics v. Harris*
    784 F.3d 1307 (9th Cir. 2015) ........................................................................ *passim*

ii

### TABLE OF AUTHORITIES
#### (continued)

**Page**

*Ctr. for Individual Freedom v. Madigan*
  697 F.3d 464 (7th Cir. 2012) ............................................................12

*Daniels-Hall v. National Educ. Ass'n*
  629 F.3d 992 (9th Cir. 2010) ..........................................................8, 13

*Family PAC v. McKenna*
  685 F.3d 800 (9th Cir. 2012) ............................................................12

*Friends of the Vietnam Veterans Mem'l v. Kennedy*
  116 F.3d 495 (D.C. Cir. 1997) ..........................................................16

*Hardman v. Feinstein*
  195 Cal. App. 3d 157 (1987) ..............................................................3

*Int'l Franchise Ass'n, Inc. v. City of Seattle*
  803 F.3d 389 (9th Cir. 2015) ............................................................17

*John Doe No. 1 v. Reed*
  561 U.S. 186 (2010) ............................................................... *passim*

*John Doe No. 1 v. Reed*
  823 F. Supp. 2d 1195 (W.D. Wash. 2011) ............................................11

*Katz v. United States*
  389 U.S. 347 (1967) ........................................................................18

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*
  416 F.3d 940 (9th Cir. 2005) ..............................................................8

*McIntyre v. Ohio Elections Comm'n*
  514 U.S. 334 (1995) ........................................................................17

*Morales v. Daley*
  116 F. Supp. 2d 801 (S.D. Tex. 2000) ................................................19

*NAACP v. Alabama*
  357 U.S. 449 (1958) ............................................................11, 12, 15

*Nat'l Ass'n of Mfrs. v. Taylor*
  582 F.3d 1 (D.C. Cir. 2009) ..............................................................12

*Navarro v. Block*
  250 F.3d 729 (9th Cir. 2001) ..............................................................7

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Pickup v. Brown*
740 F.3d 1208 (9th Cir. 2014)................................................................17

*Protectmarriage.com –Yes on 8 v. Bowen*
752 F.3d 827 (9th Cir. 2014)...........................................................9, 15

*Protectmarriage.com v. Bowen*
599 F. Supp. 2d 1197 (E.D. Cal. 2009).......................................11, 12

*Rakas v. Illinois*
439 U.S. 128 (1978)............................................................................18

*Rawlings v. Kentucky*
448 U.S. 98 (1980)..............................................................................18

*Reed v. Town of Gilbert*
135 S. Ct. 2218 (2015).................................................................17, 18

*Riley v. Nat'l Federation of the Blind of North Carolina, Inc.*
487 U.S. 781 (1988).................................................................15, 16, 17

*Robertson v. Dean Witter Reynolds, Inc.*
749 F.2d 530 (9th Cir. 1984)..............................................................8

*Smith v. Maryland*
442 U.S. 735 (1979)............................................................................18

*United States v. Jacobsen*
466 U.S. 109 (1984)............................................................................19

*United States v. Jones*
132 S. Ct. 945 (2012)..........................................................................19

*United States v. Place*
462 U.S. 696 (1983)............................................................................19

*United States v. Rubio*
727 F.2d 786 (9th Cir. 1983)..............................................................18

*United States v. Salerno*
481 U.S. 739 (1987)........................................................................8, 9

*United States v. Shryock*
342 F.3d 948 (9th Cir. 2003).........................................................18, 19

# TABLE OF AUTHORITIES
### (continued)

**Page**

*United States v. Steele*
461 F.2d 1148 (9th Cir. 1972) .................................................................19

*Van Buskirk v. Cable News Network, Inc.*
284 F.3d 977 (9th Cir. 2002) ...................................................................8

*Village of Schaumburg v. Citizens for a Better Environment*
444 U.S. 620 (1980) ..........................................................................15, 16

*Washington State Grange v. Washington State Republican Party*
552 U.S. 442 (2008) .................................................................................9

*Zucco Partners, LLC v. Digimarc Corp.*
552 F.3d 981 (9th Cir. 2009) ...................................................................8

S<small>TATUTES</small>

United States Code, Title 42
§ 1983 ...............................................................................................7, 8, 20

Internal Revenue Code
§ 6103 ...................................................................................................4
§ 6104 ...............................................................................................5, 20
§ 6104 (d)(3)(A) .....................................................................................20

California Business & Professions Code
§§ 17510-17510.95 ................................................................................3

California Civil Code
§ 1798 ....................................................................................................4

California Code of Regulations, Title 11
§ 301 ............................................................................................4, 7, 17
§ 306 .....................................................................................................17
§ 310 ...............................................................................................4, 5, 14

California Corporations Code
§ 5110 .....................................................................................................3

# TABLE OF AUTHORITIES
### (continued)

**Page**

California Government Code

    § 6254(k) ..................................................................................14

    § 12581 ......................................................................................3

    § 12584 ................................................................................3, 17

    § 12585 ..................................................................................3, 4

    § 12586 ................................................................................3, 17

    § 12586(a) ..................................................................................3

    § 12586(b) ..................................................................................3

    § 12588 ......................................................................................3

    § 12589 ......................................................................................3

    § 12590 ................................................................................4, 14

    § 12598(a) ..................................................................................3

**CONSTITUTIONAL PROVISIONS**

United States Constitution

    First Amendment................................................................ *passim*

    Fourth Amendment ............................................................ *passim*

    Supremacy Clause ............................................................. *passim*

**COURT RULES**

Federal Rule of Civil Procedure

    rule 12(b)(6) ......................................................................1, 2, 7, 8

**OTHER AUTHORITIES**

Sean McMahon, *Deregulate But Still Disclose?: Disclosure Requirements for Ballot Question Advocacy After Citizens United v. FEC and Doe v. Reed*, 113 Columbia L. Rev. 733, 746-759 (April 2013)............................................15

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT on October 6, 2016, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Morrison C. England in Courtroom 7 of the United States District Court for the Eastern District of California, located at 501 I Street, Sacramento, California 95814, Defendant Attorney General Kamala D. Harris will move this Court to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion to dismiss is brought on the grounds that the First Amended Complaint fails to state a claim as a matter of law.  This motion is based on this Notice, the Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the papers and pleadings on file in this action, this Court's May 14, 2014 Order Denying Preliminary Injunction, the Ninth Circuit's opinion in *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307 (9th Cir.), *cert. denied*, 136 S. Ct. 480 (2015), and upon such matters as may be presented to the Court at the time of the hearing.

Dated:  September 8, 2016

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General
KEVIN A. CALIA
Deputy Attorney General

*/s/ Alexandra Robert Gordon*
ALEXANDRA ROBERT GORDON
Deputy Attorney General
*Attorneys for Defendant*
*Attorney General Kamala D. Harris*

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

To protect the public from fraud and the misuse of charitable donations, California regulates tax-exempt charitable organizations.  Under state law, these organizations must file information and reports with the state Registry of Charitable Trusts.  At issue here is the requirement that charitable organizations, as a condition of enjoying the benefits of tax-exempt

1

1    status, annually submit a complete copy of Internal Revenue Service (IRS) Form 990, Schedule

2    B, which lists the names and addresses of its major contributors.  State law protects this

3    information from public disclosure, and it is used by the Attorney General to ensure that charities

4    comply with the law.

5         Plaintiff alleges that the regulation requiring charities to file with the Registry a complete

6    copy of a form they have already filed with the IRS facially violates the First Amendment rights

7    to freedom of association and speech, the Fourth Amendment, and the Supremacy Clause.

8    Plaintiff's First Amended Complaint (FAC) should be dismissed in its entirety because, even after

9    amendment, plaintiff does not allege sufficient facts in support of its constitutional claims.

10   Rather, the FAC is comprised of little more than boilerplate legal conclusions that fail to satisfy

11   the pleading burden under Federal Rule of Civil Procedure 12(b)(6).  Moreover, and of greater

12   significance, the requirement to produce Schedule B, standing alone, does not implicate the First

13   and Fourth Amendments or the Supremacy Clause, let alone violate them.  As the Ninth Circuit

14   already has held, the Schedule B requirement does not facially infringe upon First Amendment

15   rights, it is substantially related to the State's compelling interest in enforcing the law, and is thus

16   constitutional.  *See Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307 (9th Cir.) *cert denied*,

17   136 S. Ct. 480 (2015) (*CCP*).  The Ninth Circuit also has affirmed the determination of this Court

18   that plaintiff's Supremacy Clause claim fails as a matter of law.  *Id.* at 1318-19.  Plaintiff's First

19   Amendment associational rights and preemption claims are thus foreclosed.  Plaintiff's First

20   Amendment speech and Fourth Amendment claims fare no better.

21        Because plaintiff cannot demonstrate that the Schedule B reporting requirement is

22   unconstitutional, it cannot state a claim upon which relief can be granted.  Accordingly, the

23   Attorney General respectfully requests that this Court dismiss the FAC and enter judgment

24   against the plaintiff.

25

26

27

28

**BACKGROUND**

I.   **RELEVANT LAW AND PROCEDURAL HISTORY**

**A.  The Attorney General's Regulation of Tax-Exempt Charitable
      Organizations.**

In California, as in most other states, those entities that wish to enjoy the privilege and related benefits of operating and soliciting funds as a tax-exempt organization are supervised and regulated by the State.  The Attorney General is responsible for supervising approximately 110,000 charitable trusts and public benefit corporations organized or conducting business in the State of California and for protecting the public from fraud and illegality.  *See CCP*, 784 F.3d at 1310; Cal. Gov't Code §§ 12598(a), 12581.  To ensure that charitable status is not abused, the Attorney General has "broad powers under common law and California statutory law to carry out these charitable trust enforcement responsibilities."  *CCP*, 784 F.3d at 1310; Cal. Gov't Code § 12598(a).[1]  In order to regulate charitable organizations and ascertain whether the purposes of a corporation or trust are being carried out, the Attorney General may require any agent, trustee, fiduciary, beneficiary, institution, association, corporation, or other person to appear and to produce records.  Cal. Gov't Code § 12588.  Any such order has the same force as a subpoena.  *Id.* § 12589.  The Attorney General has specific authority to require periodic written reports deemed necessary to her supervisory and enforcement duties.  *Id.* § 12586.

Under the state Supervision of Trustees and Fundraisers for Charitable Purposes Act (the Act), the Attorney General maintains a register of charitable corporations and their trustees and trusts (the Registry), and may obtain "whatever information, copies of instruments, reports, and records are needed for the establishment and maintenance of the register."  Cal. Gov't Code § 12584.  Every charitable corporation and trustee subject to the Act must file an initial registration form with the Registry within 30 days after first receiving property, *id.* § 12585, and thereafter must also file periodic written reports, *id.* § 12586(a).  The Attorney General is required

---

[1] *See also* Cal. Bus. & Prof. Code §§ 17510-17510.95; Cal. Corp. Code §§ 5110, et seq.; *Hardman v. Feinstein*, 195 Cal. App. 3d 157, 161 (1987).

1   to promulgate rules and regulations specifying the time for filing reports, their contents, and the

2   manner of executing and filing.  *Id.* § 12586(b).

3       An organization must maintain membership in the Registry to solicit tax-deductible

4   donations in California.  Cal. Gov't Code § 12585.  As one condition of membership, California

5   law requires charitable organizations organized or doing business in the State to file with the

6   Registry a copy of their annual IRS Form 990, including Schedule B.  *See Americans for*

7   *Prosperity Foundation v. Harris*, 809 F.3d 536, 538 (9th Cir. 2015) (per curiam) (*AFPF*); *CCP*,

8   784 F.3d at 1310-11; Cal. Code Regs. tit. 11, § 301 (2014).[2]

9       As the Ninth Circuit has determined, the Attorney General's Schedule B requirement

10   "seeks only *nonpublic* disclosure of these forms, and she seeks them only to assist her in

11   enforcing charitable organization laws and ensuring that charities in the Registry are not engaging

12   in unfair business practices."  *AFPF*, 809 F.3d at 538 (emphasis in original).  Although certain

13   charitable organization filings are open to public inspection, *see* Cal. Gov't Code § 12590, a

14   registrant's Schedule B is not.  In keeping with federal and state law regarding the treatment of

15   donor and personal information, the Registry treats Schedule B as a confidential document.  *See*

16   *AFPF*, 809 F.3d at 538; *CCP*, 784 F.3d at 1311; IRC § 6103; Cal. Civil Code §§ 1798 et seq.

17   The Registry keeps these schedules in segregated files that are not publicly available, and uses

18   them exclusively for the regulation of charitable organizations.  *See CCP*, 784 F.3d at 1311.  This

19   non-public database is accessible only by a small number of government employees in the

20   Attorney General's office who are responsible for regulating charitable organizations, including

21   the Registrar, attorneys, investigators, and support staff.  *See id.* at 1311.

22       The Attorney General's longstanding policy of keeping Schedule B confidential recently

23   has been codified in a regulation.  *See* Cal. Code Regs., tit. 11, § 310(b) (effective July 8, 2016).

24   Specifically, California Code of Regulations section 310 has been amended as follows:

25            Donor information exempt from public inspection pursuant to Internal
             Revenue Code section 6104 (d)(3)(A) shall be maintained as confidential by
26

27   [2] Organizations must file Schedule B only if they receive a contribution from a contributor
     which exceeds the greater of $ 5,000 or two percent of the organization's total gifts, grants, and
     contributions.
28

the Attorney General and shall not be disclosed except as follows: (1) In a
court or administrative proceeding brought pursuant to the Attorney
General's charitable trust enforcement responsibilities; or (2) In response to
a search warrant.

Cal. Code Regs., tit. 11, § 310(b) (2016).

## B.  Procedural History

In 2014, plaintiff sued Attorney General Kamala D. Harris, in her official capacity, seeking declaratory and injunctive relief.  *See* ECF No. 1.  Plaintiff subsequently filed a motion for a preliminary injunction, which this Court denied.  *See* ECF Nos. 9 & 17.  In so doing, this Court held that plaintiff had not met its burden to show a likelihood of success on the merits of its preemption or First Amendment freedom of association claims.  ECF No. 17 at 4-11.  In rejecting plaintiff's preemption arguments, this Court determined that the Internal Revenue Code (IRC) only applies to the IRS and there is no evidence that Congress intended to "prevent state agencies from making requests for tax information such as Defendant's directly from 501(c)(3) organizations in the language of Section 6104, or any other section of the [Internal Revenue Code]."  *Id.* at 5-6.  Because "there is little doubt that Congress's intent was to regulate the IRS, not state agencies," and in the complete absence of any evidence to the contrary, plaintiff could not meet its burden of showing it was likely to succeed on the merits of its preemption argument. *Id.* at 8.

This Court determined that plaintiff was not likely to prevail on its First Amendment freedom of association claim for two reasons.  First, plaintiff had not articulated any objective, specific harm that would befall its members from complying with the Schedule B requirement, and thus had failed to make a prima facie showing of infringement of associational rights.  *Id.* at 11.  Second, even if plaintiff had made such a showing, the requirement would be valid because it is substantially related to the Attorney General's compelling interest in performing her regulatory and oversight function.  *Id.* at 11-12.  This Court further reasoned that because plaintiff had failed to establish any likelihood of success on its constitutional claims, it could not establish that it was likely to suffer irreparable harm in the absence of preliminary relief, or that the balance of equities tipped in its favor.  *Id.* at 12.  Finally, it held that "it is in the public interest that [the

5

1 Attorney General] continues to serve [as] chief regulator of charitable organizations in the state in

2 the manner sought." *Id.*

3     Plaintiff appealed and the Ninth Circuit affirmed. *CCP*, 784 F.3d 1307. The court of

4 appeals determined, in relevant part, that the requirement to disclose Schedules B to the Attorney

5 General posed no actual burden on the First Amendment rights of tax-exempt charitable

6 organizations, and was facially constitutional. *See id.* at 1317. Assessing the burden on

7 plaintiff's First Amendment rights resulting from the disclosure requirements, the panel made

8 clear that compelled disclosure alone does not constitute a First Amendment injury. *See id.* at

9 1314. Rather, to prevail on a First Amendment challenge to compelled disclosure of its donor

10 information, plaintiff was required to produce "evidence to suggest that their significant donors

11 would experience threats, harassment, or other potentially chilling conduct as a result of the

12 Attorney General's disclosure requirements." *Id.* at 1316. Plaintiff did not attempt, and thus

13 failed to make, this showing. *Id.*

14     Against the absence of any actual burden on plaintiff's First Amendment rights, the Ninth

15 Circuit weighed the Attorney General's "compelling interest in enforcing the laws of California,"

16 which includes having "immediate access to Form 990 Schedule B" filings. *Id.* at 1316. The

17 panel recognized that immediate access to Schedule B filings "increases her investigative

18 efficiency," by allowing her to "flag suspicious activity" through reviewing significant donor

19 information. *Id.* at 1317. The court concluded that the requirement to disclose Schedules B

20 "bears a 'substantial relation'" to a "'sufficiently important' government interest" and thus passed

21 exacting scrutiny. *Id.*[3] It also determined that plaintiff's preemption claim failed as a matter of

22 law. *See id.* at 1318-19.

23     Plaintiff filed a petition for writ of certiorari, which was denied on November 9, 2015. *See*

24 136 S. Ct. 480 (2015). Plaintiff filed its FAC on August 12, 2016. ECF No. 37.

25 _____

26     [3] The Ninth Circuit left open the possibility that plaintiff could prevail on a future as-applied challenge, if it could establish "a reasonable probability that the compelled disclosure of

27 [its] contributors' names [to state regulators] will subject them to threats, harassment, or reprisals from either Government officials or private parties." *CCP*, 784 F.3d at 1317 (citing *McConnell v.*

28 *FEC*, 540 U.S. 93, 199 (2003)).

## II.   THE ALLEGATIONS OF THE COMPLAINT

Plaintiff Center for Competitive Politics is a Virginia non-profit corporation, recognized by the IRS as a section 501(c)(3) public charity.  *See* FAC ¶ 3.  In order to solicit tax-deductible contributions in California, plaintiff is and since 2008 has been registered with the Registry of Charitable Trusts.  *Id.* ¶¶ 5-8.  Although it is required by state law to file an unredacted copy of its IRS Form 990 Schedule B with the Registry, *see e.g.*, Cal. Code Regs. tit. 11, § 301 (2014), plaintiff has never done so.  *See* FAC ¶ 40.  Plaintiff received a letter from the Attorney General's Office dated February 6, 2014, instructing it to submit a complete copy of its Schedule B as filed with the IRS.  *Id.* ¶¶ 41-43, Exh. 1.  On December 11, 2014, the Attorney General's Office sent another letter, which was one of a series of letters to plaintiff, indicating that plaintiff's registration for fiscal year 2012 was still incomplete, that it had become delinquent, and that failure to provide complete information to the Registry within 30 days would subject it to late fees and suspension.  *Id.* ¶¶ 44-45, 47-48.  The December 11 letter also informed plaintiff that the Registry would notify the California Franchise Tax Board "to disallow its tax exemption," that the Tax Board might revoke its tax-exempt status, and that it might be subject to the minimum tax penalty (by the Tax Board).  *Id.* ¶ 46.  Plaintiff filed its most recent Annual Registration Renewal Fee Report on December 11, 2015.  *Id.* ¶ 50.  Plaintiff allegedly has chosen to cease fundraising in California rather than comply with the state-law requirement to file a complete copy of its Schedule B with the Registry.  *Id.* ¶ 51.

The FAC alleges that the requirement to submit a complete copy of the Schedule B form on file with the IRS to the Registry violates the First Amendment rights to association and speech, *id.* ¶¶ 78-79; the Fourth Amendment, *id.* ¶ 85; the Supremacy Clause, *id.* ¶ 89-90; and 42 U.S.C. section 1983, *id.* ¶¶ 78-80, 85.

## ARGUMENT

### I.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

7

2001).  Dismissal is proper where there is no cognizable legal theory or there are insufficient facts alleged to support a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  To defeat a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); that is, the plaintiff must allege facts that consist of "more than a sheer possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," instead, the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, a court must assume the plaintiff's allegations of fact are true and must draw all reasonable inferences in his or her favor.  *See Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  While the court generally looks only to the face of the complaint and its exhibits, *Van Buskirk v. Cable News Network, Inc*., 284 F.3d 977, 980 (9th Cir. 2002), the court may also consider documents that are proper subjects of judicial notice, *Zucco Partners, LLC v. Digimarc Corp*., 552 F.3d 981, 991 (9th Cir. 2009).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

## II.   THE COMPLAINT FAILS TO STATE A CLAIM AS A MATTER OF LAW

Plaintiff appears to bring a facial challenge to the Schedule B requirement on the grounds that it violates the First Amendment rights to association and speech, the Fourth Amendment, and the Supremacy Clause of the United States Constitution as well as 42 U.S.C. section 1983.  *See CCP*, 784 F.3d at 1314 (construing plaintiff's claim as a facial challenge where claim "is not limited to its particular case" and "the relief that would follow ... reach[es] beyond the particular circumstances of th[is] plaintif[f].") (citation omitted).  In order to succeed on a facial challenge, plaintiff "must establish that no set of circumstances exists under which the [regulation or statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also Chemical*

8

1   *Specialties Mfrs. Ass'n, Inc. v. Allenby*, 958 F.2d 941, 943 (9th Cir. 1992).  To support a finding

2   of facial unconstitutionality, voiding a statute or regulation as a whole, plaintiff cannot prevail by

3   suggesting that in some future hypothetical situation constitutional problems may possibly arise

4   as to the particular *application* of the statute.  Rather, it must show that the statute is

5   unconstitutional in *all* of its applications.  *See Washington State Grange v. Washington State*

6   *Republican Party*, 552 U.S. 442, 450 (2008).  Where, as here, a statute has a "plainly legitimate

7   sweep," a facial challenge must fail.  *Id.* at 449 (citation and internal quotations omitted).

8   Plaintiff has not met the "heavy burden" to show that the Schedule B requirement facially violates

9   the First Amendment and Fourth Amendments or the Supremacy Clause.  *Salerno*, 481 U.S at

10   745.  Indeed, plaintiff has failed to allege sufficient facts to state a cause of action under these

11   clauses, let alone facts demonstrating a total and fatal conflict with their prohibitions.  *See id.*

12   **A.  Plaintiff's First Amendment Associational Rights Claim Fails.**

13   Even after amendment, and despite clear instructions from the Ninth Circuit as to its burden

14   to allege First Amendment harm, *see CCP*, 784 F.3d at 1316-17; *AFPF*, 809 F.3d at 539-41,

15   plaintiff has not alleged any injury to its First Amendment rights at all, and certainly no harm

16   caused by the requirement to disclose its Schedule B to the Registry.  Absent a sufficient, well-

17   pled nexus to an actual First Amendment burden caused by the provision of Schedule B to the

18   Attorney General, which is missing here, plaintiff cannot state a plausible First Amendment

19   associational rights claim.  *See AFPF*, 809 F.3d at 540-41; *Citizens United v. Schneiderman*, No.

20   14-CV-3703 (SHS), 2016 WL 4521627, at *7 (S.D.N.Y. Aug. 29, 2016).  Accordingly, plaintiff's

21   associational rights claim must be dismissed.

22   First Amendment challenges to disclosure requirements are evaluated under "exacting

23   scrutiny."  *See John Doe No. 1 v. Reed*, 561 U.S. 186, 196 (2010); *CCP*, 784 F.3d at 1314.  In

24   analyzing First Amendment challenges to disclosure requirements under this standard, the Court

25   "first ask[s] whether the challenged regulation burdens First Amendment rights.  If it does, [it]

26   then assess[es] whether there is a 'substantial relation' between the burden imposed by the

27   regulation and a 'sufficiently important' governmental interest."  *Protectmarriage.com –Yes on 8*

28   *v. Bowen*, 752 F.3d 827, 832 (9th Cir. 2014), *cert. denied sub nom. Protectmarriage.com-Yes on*

9

1    *8 v. Padilla*, 135 S. Ct. 1523 (2015); *see also Citizens United v. Fed. Election Comm'n*, 558 U.S.

2    310, 366 (2010).  As the Ninth Circuit has held, compelled disclosure, alone, does not constitute

3    First Amendment injury and need not be weighed when applying exacting scrutiny.  *See CCP*,

4    784 F.3d at 1314.  Rather, the Court must "balance the 'seriousness of the *actual* burden on a

5    plaintiff's First Amendment rights.'"  *Id.* (citing *John Doe No. 1*, 561 U.S. at 196) (emphasis in

6    original).[4]

7            The Ninth Circuit has held that, in the absence of any evidence of actual harm, the Schedule

8    B disclosure requirement poses no actual burden on the First Amendment rights of tax-exempt

9    charitable organizations, is substantially related to the Attorney General's compelling interest in

10   enforcing the law and protecting the public, and thus satisfies exacting scrutiny and is facially

11   constitutional.  *See CCP*, 784 F.3d at 1316-17; *AFPF*, 809 F.3d at 538.  Plaintiff's associational

12   rights claim is thus foreclosed.  *See CCP*, 784 F.3d at 1316-17.  While the Ninth Circuit

13   acknowledged that plaintiff theoretically could prevail on a future as-applied challenge, plaintiff

14   has not alleged an as-applied challenge.  There are no allegations in the FAC that even hint at a

15   "'reasonable probability that the compelled disclosure of [its] contributors' names will subject

16   [plaintiff or its members] to threats, harassment, or reprisals from either Government officials or

17   private parties' that would warrant relief on an as-applied challenge."  *Id.* at 1317 (quoting

18   *Buckley v. Valeo*, 424 U.S. 1, 74 (1976), and *John Doe No.* 1, 561 U.S. at 196); *see also Brock v.*

19   *Local 373, Plumbers Int'l Union of America*, 860 F.2d 346, 349-50 & n.1 (9th Cir. 1988)

20   (requiring plaintiffs to demonstrate through objective and articulable facts, a "prima facie

21   showing of arguable first amendment infringement" caused by the challenged disclosure).

22           In fact, the FAC does not contain a single allegation that suggests that the Attorney

23   General's demand for and collection of Schedule B forms for nonpublic use has caused any

24   ────────────────────

25           [4] Plaintiff ignores the Ninth Circuit's decision in *Ctr. for Competitive Politics* regarding
     its burden to demonstrate First Amendment injury.  Instead, it reasserts that all disclosure (of

26   major donors, even for nonpublic use), "unconstitutionally burdens freedom of association."
     FAC ¶¶ 52-55.  However, this argument has been rejected by both the Supreme Court and the

27   Ninth Circuit, including in this litigation.  *See Buckley*, 424 U.S. at 74; *CCP*, 784 F.3d at 1316
     ("no case has ever held or implied that a disclosure requirement in and of itself constitutes First

28   Amendment injury"); *AFPF*, 809 F.3d at 540 (same).

1   threats, harm, or negative consequences to plaintiff or its members.  The singular effect of the

2   Schedule B requirement on plaintiff appears to be that it has chosen not to fundraise in California

3   rather than comply with state law.  *See* FAC ¶ 51.  However, plaintiff's voluntary decision to

4   forego the privilege of soliciting funds as a tax-exempt entity rather than comply with a law that

5   is constitutional, *see CCP*, 784 F.3d at 1316-17; *AFPF*, 809 F.3d at 538, is not cognizable First

6   Amendment harm.  *See Citizens United*, 2016 WL 4521627, at *7 ("[T]he desire for privacy and

7   loss of donations alone does not render viable an as-applied challenge to a disclosure regime.")

8   (citing *Buckley*, 424 U.S. at 71-72, and *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464,

9   477 (7th Cir. 2012)); *cf. Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d

10  Cir. 1995) ("Because defendants have acted to permit the outcome that they deem unacceptable,

11  we must conclude that such an outcome is not an irreparable injury.  If the harm complained of is

12  self-inflicted, it does not qualify as irreparable.").

13       The FAC bears no resemblance to the few cases in which as-applied challenges to

14  disclosure have been upheld, involving plaintiffs who were generally minority groups that were

15  "unpopular, villified, and historically rejected by the government and the citizenry," such as the

16  NAACP in the pre-Civil Rights Era and the Socialist Party during the Cold War.  *Brown v.*

17  *Socialist Workers '74 Campaign*, 459 U.S. 87, 88 (1982); *NAACP v. Alabama*, 357 U.S. 449,

18  462-63 (1958); *cf. John Doe No.* 1 *v. Reed*, 823 F. Supp. 2d 1195, 1201 (W.D. Wash. 2011)

19  (noting that as-applied exemption from disclosure requirements have "been upheld in only a few

20  cases").  These groups were subjected to government-sponsored hostility and brutal, pervasive

21  private violence both generally and as a result of diclsoure.  *See, e.g.*, *Brown*, 459 U.S. at 98-99;

22  *Bates v. Little Rock*, 361 U.S. 516, 525 (1960); *NAACP*, 357 U.S. at 462-63.  They also could not

23  seek adequate relief from law enforcement or the legal system.  *See Protectmarriage.com v.*

24  *Bowen*, 599 F. Supp. 2d 1197, 1217-18 (E.D. Cal. 2009); *cf. John Doe No.* 1, 561 U.S. at 215

25  (Sotomayor, J., concurring) ("Case specific relief may be available . . . in the rare circumstance in

26  which disclosure poses a reasonable probability of serious and widespread harassment that the

27  State is unwilling or unable to control.").

28

Plaintiffs bringing successful as-applied challenges in these cases demonstrated that the specific (public) disclosure requirement at issue would result in threats, harassment, reprisals, and other negative consequences that would discourage the exercise of First Amendment rights. *Brown*, 459 U.S. at 98-99 ("reasonable probability" standard met where Court had before it "substantial evidence of both government and private hostility toward and harassment of [Socialist Worker Party] members and supporters"); *NAACP*, 357 U.S. at 462-63 (considering "uncontroverted showing" that on past occasions disclosure of its members' identities had exposed them to "economic reprisal, loss of employment, threat of physical coercion and other manifestations of public hostility."); *see also Buckley*, 424 U.S. at 71-72 (rejecting as-applied challenge and stating "where it exists, the type of chill and harassment identified in *NAACP v. Alabama* can be shown," but "no appellant in this case has tendered record evidence of the sort proffered in *NAACP v. Alabama*"); *Protectmarriage.com*, 599 F. Supp. 2d at 1215 ("Notably absent from this case is any evidence that those burdens hypothesized by the Supreme Court would befall the current Plaintiffs.").

Here, by contrast, plaintiff has not alleged the "significant or systemic risk of harassment or retaliation" required to demonstrate First Amendment injury. *Family PAC v. McKenna*, 685 F.3d 800, 807 (9th Cir. 2012).  In addition to the glaring lack of allegations of harm caused by the challenged disclosure requirement, *see AFPF*, 809 F.3d at 540, the FAC does not suggest that plaintiff is unpopular, that its financial backing is so insubstantial that its purported decision to stop fundraising in California will render it obsolete, or that plaintiff or any of its members "intend to retreat from the marketplace of ideas such that available discourse will be materially diminished." *Protectmarriage.com*, 599 F. Supp. 2d at 1215.  Plaintiff has thus failed to state a First Amendment freedom of association claim. *See, e.g.*, *Ctr. for Individual Freedom v. Madigan*, 697 F.3d at 482-83 (affirming dismissal of association rights claim where plaintiff provided "scant evidence or argument," that public disclosure requirement "would be at all likely to precipitate threats, harassment, or reprisals against it.") (citing *Buckley*, 424 U.S. at 74); *Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 21–22 (D.C. Cir. 2009) (affirming dismissal of complaint challenging disclosure requirement where plaintiff did not allege substantial risk of harm and

1    relied on "clearly articulated fears" and a few examples of harassment unconnected to the

2    disclosure at issue); *Citizens United*, 2016 WL 4521627, at *7-8 (dismissing as-applied freedom

3    of association claim where plaintiff failed to allege "any fact that could render future negative

4    consequences [arising from disclosure] plausible.").

5         Instead of alleging cognizable First Amendment harm, plaintiff devotes pages of the FAC

6    to attacking the Attorney General's policy of maintaining Schedule B as a confidential document

7    for non-public use by regulators.  *See* FAC ¶¶ 23-39.  The FAC alleges that the Attorney General

8    does not have a meaningful confidentiality policy because after a bench trial in *Americans for*

9    *Prosperity v. Harris*, Case No. 2:14–cv–09448–R–FFM, the Honorable Manuel L. Real, District

10   Judge for the Central District of California, found that over a period of years, 1,778 unredacted

11   Schedules B had inadvertently been placed in the portion of the Registry's website that

12   theoretically could have been accessed by the public, FAC ¶¶ 26-33, 37-38, and/or because

13   California law requires that Schedule B be publicly disclosed, *see* FAC ¶¶ 23-24, 39.[5]  Plaintiffs

14   appear to suggest, *see* FAC ¶ 26, that these allegations somehow eradicate the basis for binding

15   decisions of the Ninth Circuit in *CCP* and *AFPF* that the Schedule B requirement does not burden

16   First Amendment rights, is substantially related to the State's compelling interest in enforcing the

17   law and protecting the public, and thus satisfies exacting scrutiny and is facially constitutional.[6]

18   *CCP*, 784 F.3d at 1317; *AFPF*, 809 F.3d at 538.  Plaintiff is wrong.

19

20

21        [5] Defendant has appealed from the district court's order in *Americans for Prosperity v.*
     *Harris* and plaintiff has cross-appealed from the district court's determination that the Schedule B
22   requirement is facially constitutional.  *See* Ninth Cir. Case Nos. 16-55727 & 16-55786.

23        [6] The FAC also alleges that "[t]he record before the [district court in *APFP*] lack[ed] even
     a single, concrete instance in which pre-investigation collection of a Schedule B did anything to
24   advance the Attorney General's investigative, regulatory or enforcement efforts."  FAC ¶ 19
     (citing *Americans for Prosperity Found. v. Harris*, No. CV 14-9448-R, 2016 WL 1610591, at *3
25   (C.D. Cal. Apr. 21, 2016)).  Even assuming that this conclusion is "true," *see Daniels-Hall*, 629
     F.3d at 998, and outside for purposes of this motion, the Attorney General disputes that it is, it is
26   immaterial.  Given that the Schedule B requirement has not caused any specific harm to plaintiff,
     it is bound by the Ninth Circuit's ruling as a matter of law that the requirement is substantially
27   related to the Attorney General's compelling interest in enforcing the law and protecting the
     public from fraud and illegality and is thus constitutional.  *AFPF*, 809 F.3d at 538-39; *CCP*, 784
28   F.3d at 1316-17.

13

1    The Ninth Circuit already has determined that the Attorney General does have an adequate

2    confidentiality policy, which has now been codified in a formal regulation, *see* Cal. Code Regs.,

3    tit. 11, § 310(b) (2016).  *CCP*, 784 F.3d at 1316 ("[I]n this case, the disclosure would not be

4    public. The Attorney General keeps Form 990 Schedule B confidential."); *AFPF*, 809 F.3d at 538

5    (The Attorney General's Schedule B requirement "seeks only *nonpublic* disclosure of these

6    forms, and she seeks them only to assist her in enforcing charitable organization laws and

7    ensuring that charities in the Registry are not engaging in unfair business practices."); *id.* (The

8    Attorney General's "long-standing policy of treating Schedule B forms as confidential, as well as

9    her proposed regulation formalizing that policy, confirm that the state has no interest in public

10   disclosure.").  This determination was based on evidence that it has been the longstanding policy

11   and practice of the Attorney General to maintain Schedule B as a confidential document; it was

12   not based, as plaintiff suggests, on any representation by the Attorney General that this policy has

13   been executed perfectly over the course of decades.  The Ninth Circuit considered most of the

14   evidence regarding inadvertent disclosures contained in the FAC and held:  "[t]he plaintiffs'

15   allegations that technical failures or cybersecurity breaches are likely to lead to inadvertent public

16   disclosure of their Schedule B forms are too speculative to support issuance of an injunction."

17   *AFPF*, 809 F.3d at 541; *see also* Response of Plaintiff-Appellee to Motion to Stay Trial

18   Proceedings and Supporting Declaration, Ninth Circuit Case No. 15-55446, ECF Nos. 35-1 at 22-

19   26; 35-2 at 2-59, attached as Exhibits A & B to the accompanying Defendant's Request for

20   Judicial Notice in Support of Motion to Dismiss (setting forth argument regarding and evidence

21   of inadvertent disclosures).  With respect to plaintiff's arguments concerning California law, to

22   the extent that there ever was any uncertainty about whether the Attorney General could be

23   compelled to produce a Schedule B pursuant to California Government Code section 12590 or the

24   Public Records Act, it has been put to rest by the adoption of a formal regulation mandating that

25   Schedule B be shielded from public disclosure.  *See* Cal. Code Regs., tit. 11, § 310(b) (2016);

26   Cal. Gov't Code §§ 6254(k) (exempting from public disclosure records "the disclosure of which

27   is exempted or prohibited pursuant to federal or state law."); 12590 (providing that filings in the

28

1    Registry of Charitable Trusts "shall be open to public inspection" subject to "reasonable rules and

2    regulations adopted by the Attorney General.").

3         Moreover, even if the Attorney General did make Schedule B public, and she does not, the

4    disclosure requirement would remain constitutional.  The Supreme Court and the Ninth Circuit

5    repeatedly have affirmed the constitutionality of public disclosure in a variety of contexts,

6    including the regulation of charities.  *See, e.g.*, *Citizens United*, 558 U.S. at 366-371 (upholding

7    public disclosure requirement because "[t]he First Amendment protects political speech, and

8    disclosure allows citizens and shareholders to react to the speech of corporate entities in a proper

9    way"); *Riley v. Nat'l Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 800 (1988)

10   ("[A]s a general rule, the State may publish the detailed financial disclosure forms it requires

11   professional fundraisers to file."); *Village of Schaumburg v. Citizens for a Better Environment*,

12   444 U.S. 620 (1980); *Protectmarriage.com-Yes on 8*, 752 F.3d at 832-33 (collecting cases).[7]  As

13   discussed above, in the few cases in which public disclosure requirements have been struck down

14   plaintiff has established a reasonable probability of harm to its members as a result of disclosure.

15   *See Brown*, 459 U.S at 98-99; *NAACP*, 357 U.S. at 462-63.  Plaintiff, as also discussed above, has

16   not even attempted to allege any such harm caused by public or nonpublic disclosure to the

17   Attorney General.  Accordingly, it has not stated a plausible claim for relief for violation of its

18   First Amendment associational rights.

19                    **B.   Plaintiff's First Amendment Speech Claim Fails.**

20        Count I of the FAC also alleges, without any factual support or elaboration, that the

21   requirement to file a Schedule B "as a predicate to Plaintiff's ability to lawfully speak about a

22   topic or subject matter – name charitable solicitation" violates its First Amendment right to free

23   speech.  FAC ¶ 80.  The FAC states that the Schedule B requirement operates as a content-based

24   restriction on charitable solicitation, "which itself is a form of First Amendment speech."  *Id.*

25   _____

26        [7] *See also* Sean McMahon, *Deregulate But Still Disclose?: Disclosure Requirements for
     Ballot Question Advocacy After Citizens United v. FEC and Doe v. Reed*, 113 Columbia L. Rev.

27   733, 746-759 (April 2013) (detailing the Court's "strong affirmation of the constitutionality and
     utility of disclosure requirements").

28

¶¶ 58-62.  As an initial matter, such conclusory allegations fail to satisfy plaintiff's pleading burden.  *Iqbal*, 556 U.S. at 678; *id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  The FAC does not identify any speech that is impacted by the reporting requirement.  *See Citizens United*, 558 U.S. at 367 (setting forth proof to establish threshold case of harm to speech rights from disclosure).  Moreover, plaintiff cannot make such a showing because the challenged requirement merely demands an "after-the-fact" reporting of the identities and expenditures of major donors, and so does not unconstitutionally regulate speech within the meaning of the First Amendment.  *See John Doe 1 v. Reed*, 561 U.S. at 196 (noting that "a disclosure requirement" is "not a prohibition on speech," because while such "requirements may burden the ability to speak, . . . they do not prevent anyone from speaking").  At most, the FAC suggests that because plaintiff has elected to not comply with the Schedule B disclosure requirement and instead purportedly stopped fundraising in California, that its speech has been impaired.

This argument, however, fails as a matter of law.  While plaintiff is correct that solicitation of charitable contributions is protected speech, *see Riley*, 487 U.S. at 789, there is no support for its notion that any regulation that may somehow impact the ability or willingness to secure or donate funds is constitutionally invalid.  Charitable solicitation is protected not because the First Amendment contemplates the right to raise money, but because the act of soliciting funds is "characteristically intertwined with informative and perhaps persuasive speech."  *See Village of Schaumburg*, 444 U.S. at 632; *Friends of the Vietnam Veterans Mem'l v. Kennedy*, 116 F.3d 495, 497 (D.C. Cir. 1997) (noting that cases protecting the right to solicit contributions do so not based on a First Amendment right to raise money, but because "the act of solicitation contains a communicative element"); *cf. Schaumburg*, 444 U.S. at 635 (suggesting that ordinance would be enforceable against organizations whose speech was severable from fundraising activities).

By contrast, the act of later reporting to the government on the outcome of charitable solicitation does not have the same communicative element and does not impermissibly "burden" speech.  *See Riley*, 487 U.S. at 800 ("[A]s a general rule, the State may itself publish the detailed financial disclosure forms it requires professional fundraisers to file.  This procedure would

16

1   communicate the desired information to the public without burdening the speaker during the

2   course of a solicitation."); *ACLU v. Heller*, 378 F.3d 979, 992 (9th Cir. 2004) ("[R]equiring a

3   publisher to reveal her identity on her election-related communication is considerably more

4   intrusive than simply requiring her to report to a government agency for later publication how she

5   spent her money.  The former necessarily connects the speaker to a particular message directly,

6   while the latter may simply expose the fact that the speaker spoke."); *Cal. Pro-Life Council, Inc.*

7   *v. Getman*, 328 F.3d 1088, 1104 (9th Cir. 2003) (distinguishing between the regulation of

8   anonymous speech and the mandatory disclosure of campaign-related expenditures and

9   contributions) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 355 (1995)).

10        Accordingly, there is a significant constitutional distinction between requiring the reporting

11   of funds that may be used to finance speech and the direct regulation of speech itself.  *See, e.g.*,

12   *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 187, 198-99 (1999);

13   *Heller*, 378 F.3d at 987, 990-92.  The former category regularly is upheld, while the latter

14   generally is not.  *Compare John Doe 1 v. Reed*, 561 U.S. at 201-02, *and Citizens United,* 558 U.S.

15   at 366-371, *and Buckley*, 424 U.S. at 69-72, *with Riley*, 487 U.S. at 788-802, *and McIntyre*, 514

16   U.S. at 345-47, 357.[8]  Here, the law requires all charitable organizations to furnish information

17   about their donors to a confidential registry; it does not place any limitations on protected speech

18   nor does it compel any speech by fundraisers.  *See* Cal. Gov't Code §§12584 & 12586; Cal. Code

19   Regs. tit. 11, §§ 301 & 306 (2014).  It does not infringe upon speech.[9]  Plaintiff's First

20   Amendment speech claim fails as a matter of law and should thus be dismissed.

---

21        [8] For this reason, the cases cited in the FAC, all of which involve the direct regulation of

22   solicitation and speech or prior restraints, are inapposite.  *See* FAC ¶ 61 (citing *Riley*, 487 U.S. at
     798, *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 474 (1989); and *Gaudiya*

23   *Vaishnava Society v. City & County of San Francisco*, 952 F.2d 1059 (9th Cir.1990)).

24        [9] Given that the Schedule B requirement does not regulate speech, it follows that it cannot
     be a content-based restriction on speech subject to strict scrutiny.  *See Pickup v. Brown*, 740 F.3d
     1208, 1231 (9th Cir.), *cert. denied*, 134 S. Ct. 2871 (2014).  For this reason, *Reed v. Town of*

25   *Gilbert*, 135 S. Ct. 2218 (2015), which is cited in the FAC, is not applicable.  *See Int'l Franchise*
     *Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 409 (9th Cir. 2015), *cert. denied sub nom. Int'l*

26   *Franchise Ass'n, Inc. v. City of Seattle, Wash.*, 136 S. Ct. 1838 (2016) (declining to apply
     heightened scrutiny under *Reed* to ordinance where "[a]lthough the franchisees are identified in

27   part as companies associated with a trademark or brand, the ordinance applies to businesses that
     have adopted a particular business model, not to any message the businesses expresses.").

28                                                                                    (continued…)

### C.  Plaintiff's Fourth Amendment Claim Fails.

Count II of the FAC alleges that the Schedule B requirement is an unconstitutional search and seizure that violates the Fourth Amendment.  FAC ¶¶ 85.  The FAC asserts that because the reporting requirement has "the force of a subpoena" and because it does not allow for "precompliance review" it amounts to an unreasonable search and seizure that does not fall within the administrative search exception to the warrant requirement.  *Id.* ¶¶ 64-68, 85.  Much like plaintiff's other causes of action, its Fourth Amendment claim is not sufficiently well-plead, *Iqbal*, 556 U.S. at 678, and is legally baseless.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...."  To establish a Fourth Amendment claim, a plaintiff must first establish that there was a search and seizure within the meaning of the Fourth Amendment, that it was unreasonable, and conducted without consent.  *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *United States v. Rubio*, 727 F.2d 786, 796-797 (9th Cir. 1983).  There are two ways in which the government's conduct may constitute a "search" implicating the Fourth Amendment.  First, a Fourth Amendment search occurs when "the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action."  *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (citations and quotation marks omitted).  Under this test, plaintiff must also establish that the search occurred where it had manifested a legitimate expectation of privacy in the place searched or the item seized.  This expectation is established where a plaintiff can show:  (1) a subjective expectation of privacy; and (2) an objectively reasonable expectation of privacy.  *See Katz v. United States*, 389 U.S. 347, 351 (1967); *United States v. Shryock*, 342 F.3d 948, 978 (9th Cir. 2003).  It is plaintiff's burden to establish both elements.  *See Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).  Second, a Fourth Amendment

---

(...continued)

Moreover, even if *Reed* did somehow apply here, the disclosure requirement, which is neutral and generally applicable, would still be valid.  Plaintiff has not alleged, nor could it, that Schedule B is required "because of the topic discussed or the idea or message expressed."  *Reed*, 135 S. Ct. at 2227.  Schedule B is required as part of a reporting scheme that allows the Attorney General to monitor charities, enforce the law, and protect the public from charitable fraud and illegality.

1   search occurs where the government unlawfully, physically occupies private property for the

2   purpose of obtaining information and without consent.  *United States v. Jones*, 132 S. Ct. 945,

3   949-54 (2012).  A "seizure" occurs when there is some "meaningful interference with an

4   individual's possessory interests in [] property."  *United States v. Jacobsen*, 466 U.S. 109, 113

5   (1984).

6        Beyond stating bare legal conclusions, the FAC does not demonstrate, and it is not obvious,

7   that the requirement to submit a copy of the very same form on file with the IRS to the Attorney

8   General for nonpublic use is a search or seizure within the meaning of the Fourth Amendment.

9   *See id.*, 466 U.S. at 120-24.  The FAC fails to allege that plaintiff has any reasonable expectation

10  of privacy in the information regarding the donors listed on Schedule B with respect to a

11  confidential disclosure to government agencies.  *Shryock*, 342 F.3d at 978.  It also fails to allege,

12  nor could it, that the demand for its Schedule B involves government "trespass," and/or

13  "meaningful interference" with its property.  *See Jones*, 132 S. Ct. at 949, 951-52; *Jacobsen*, 466

14  U.S. at 120-24; *see also Morales v. Daley*, 116 F. Supp. 2d 801, 820 (S.D. Tex. 2000), *aff'd sub*

15  *nom. Morales v. Evans*, 275 F.3d 45 (5th Cir. 2001) (rejecting Fourth Amendment challenge to

16  questions asked by United States Census form); *United States v. Steele*, 461 F.2d 1148, 1150 n.3

17  (9th Cir. 1972) ("Steele's Fourth Amendment challenge to the census is without merit.").

18       Even if the FAC did allege these threshold requirements, whatever minimal intrusion into

19  plaintiff's reasonable expectations of privacy the Schedule B requirement might involve is more

20  than outweighed by the Attorney General's interest in enforcing the law and protecting the public

21  from fraud.  *See United States v. Place*, 462 U.S. 696, 703 (1983); *cf. CCP*, 784 F.3d at 1316-17.

22  Any search or seizure of donor information by the Attorney General would thus be reasonable.[10]

23  Accordingly, plaintiff's Fourth Amendment claim must be dismissed.

24              **D.  Plaintiff's Supremacy Clause Claim Fails.**

25       Count III of the FAC alleges that the Schedule B requirement violates the Supremacy

26  _____

27       [10] Given that the Schedule B requirement is not a search, administrative or otherwise, it is
    not necessary to determine whether there is adequate "precompliance review" and/or whether the
    administrative search exception to the warrant requirement is satisfied.

28

Clause.  Specifically, the FAC alleges that the reporting requirement is preempted by Internal Revenue Code section 6104(d)(3)(A).  *See* FAC ¶¶ 89-90.  Plaintiff's preemption claim is foreclosed by the Ninth Circuit's decision in *CCP*.  *See CCP*, 784 F.3d at 1318-19 (holding that "Section 6104 does not so clearly manifest the purpose of Congress that we could infer from it that Congress intended to bar state attorneys general from requesting the information contained in Form 990 Schedule B" and thus that "CCP's preemption claim must fail.").  Accordingly, this Court should dismiss Count III of the FAC.

### E.  Plaintiff is not Entitled to Relief Under 42 U.S.C. Section 1983.

The FAC alleges that the Schedule B requirement violates 42 U.S.C. section 1983, insofar as it violates the First and Fourth Amendments.  FAC ¶¶ 78-80, 85.  However, because plaintiff has failed to adequately allege violations of the First and Fourth Amendments for the reasons set forth above, plaintiff's necessarily fails to state a claim for relief under section 1983.

### CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court dismiss the First Amended Complaint in its entirety without leave to amend.

Dated:  September 8, 2016                              Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General
KEVIN A. CALIA
Deputy Attorney General

*/s/ Alexandra Robert Gordon*
ALEXANDRA ROBERT GORDON
Deputy Attorney General
*Attorneys for Defendant*
*Attorney General Kamala D. Harris*

20

# CERTIFICATE OF SERVICE

Case Name:     ***Center for Competitive Politics v.***     No.     **2:14-cv-00636-MCE-DAD**
                   ***Kamala Harris***

I hereby certify that on <u>September 8, 2016</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT ATTORNEY GENERAL KAMALA D. HARRIS'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12 (b)(6)**

**DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS; DECLARATION OF ALEXANDRA ROBERT GORDON**

**[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12 (b)(6)**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>September 8, 2016</u>, at San Francisco, California.


|  |  |
|---|---|
| A. Bermudez | */s/ A. Bermudez* |
| Declarant | Signature |

SA2014115142
20893887.doc