UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR COMPETITIVE POLITICS,<br><br>Plaintiff,<br><br>v.<br><br>KAMALA HARRIS, in her official capacity as Attorney General of the State of California,<br><br>Defendant. | No. 2:14-cv-00636-MCE-DB<br><br>**MEMORANDUM AND ORDER** |

Through the present action, Plaintiff Center for Competitive Politics ("Plaintiff") seeks to permanently enjoin against Defendant Kamala Harris in her official capacity as Attorney General of the State of California ("Defendant") from requiring an unredacted copy of Plaintiff's IRS Form 990 Schedule B as a condition of soliciting funds in California on grounds that said requirement violates Plaintiff's rights under the First and Fourth Amendments to the United States Constitution, and further violates the Constitution's Supremacy Clause.[1]  Plaintiff brings those claims under the auspices of 42 U.S.C. § 1983.  Now before the Court is Defendant's Motion to Dismiss Plaintiff's First

---

[1] In its opposition, Plaintiff does not substantively address Defendant's request that its Supremacy Clause preemption argument be dismissed, indicating only that it wishes to preserve that contention for

1

Amended Complaint ("FAC") in its entirety, brought under Federal Rule of Civil Procedure 12(b)(6) on grounds that it fails to state a claim upon which relief can be granted. For the reasons set forth below, Defendant's Motion is GRANTED.[2]

**BACKGROUND**

Plaintiff is a Virginia nonprofit corporation recognized by the Internal Revenue Service as a § 501(c)(3) public charity. FAC, ¶ 3. Its stated mission is "to promote and defend the First Amendment rights of free political speech, assembly, association, and petition through research, education, and strategic litigation." Center for Competitive Politics v. Harris ("CCP"), 784 F.3d 1307, 1311 (9th Cir. 2015). To support its activities, Plaintiff solicits charitable contributions nationwide, including California. Id.

To ensure that charitable status is not abused, the Attorney General has "broad powers under common law and California statutory law to carry out [its] charitable trust enforcement responsibilities." Id. at 1310; Cal. Gov't Code § 12598(a). In order to legally solicit tax-deductible contributions in California, for example, an entity must be registered with the state's Registry of Charitable Trusts ("Registry"), which is administered by California's Department of Justice under the Supervision of Trustees and Fundraisers for Charitable Purposes Act, Cal. Gov't Code § 12580 et seq. ("the Act"). In addition to requiring the California Attorney General to maintain a registry of charitable corporation and their trustees and trusts, the Act authorizes the Attorney General to obtain "whatever information, copies of instruments, reports, and records are needed for the establishment and maintenance of the [Registry]. Id. at § 2485.

To maintain membership in the Registry, nonprofit corporations must file annual periodic written reports with the state Attorney General, and the Act requires that the Attorney General promulgate rules and regulations specifying both the filing and

---
[2] Having determined that oral argument would not be of material assistance, the Court ordered this Motion submitted on the briefs in accordance with E.D. Local Rule 230(g).

2

procedures and the contents of the reports. Id. at § 12586(b); Cal. Code Regs. Tit. 11, § 300 et seq. (2014). One of the regulations adopted by the Attorney General requires the periodic written reports to include Internal Revenue Service Form 990. Form 990 has a supplement, Schedule B, which lists the names and addresses of an organization's contributors. Although many of the documents required by the Registry are open to public inspection, the contents of Form 990 Schedule B have always been considered confidential, accessible only to in-house-staff and handled separately from non-confidential documents. See CCP, 784 F.3d at 1311. Moreover, in order to codify that longstanding practice on only nonpublic disclosure, California Code of Regulations § 310 was amended effective July 8, 2016 to provide as follows:

> Donor information exempt from public inspection pursuant to Internal Revenue Code section 6104(d)(3)(A) shall be maintained as confidential by the Attorney General and shall not be disclosed except as follows: (1) In a court or administrative proceeding brought pursuant to the Attorney General's charitable trust enforcement responsibilities; or (2) In response to a search warrant.

Cal. Code Regs., tit. 11, § 310(b) (2016).

Plaintiff has been a member of the Registry since 2008. On January 9, 2014, Plaintiff filed its Annual Registration Renewal Fee Report with Defendant, including a copy of its Form 990 and a redacted version of its Schedule B omitting the names and addresses of its contributors. Plaintiff subsequently received a letter from Defendant dated February 6, 2014 ("Letter"). See ECF No. 37-2. In the Letter, Defendant acknowledged receipt of Plaintiff's periodic written report, but stated that "[t]he filing is incomplete because the copy of [its] Schedule B, Schedule of Contributors, does not include the names and addresses of contributors." Id. (emphasis omitted). The Letter advised that "[t]he Registry retains Schedule B as a confidential record for IRS Form 990 and 990-EZ filers" and requires that Plaintiff must "[w]ithin 30 days of the date of this letter . . . submit a complete copy of Schedule B, Schedule of Contributors, for the fiscal year noted above, as filed with the Internal Revenue Service." Id. (emphasis omitted).

On March 7, 2014, Plaintiff filed the present suit against then Attorney General

3

Kamala Harris, in her official capacity, challenging the Attorney General's disclosure requirements and seeking declaratory and injunctive relief. Plaintiff subsequently filed a motion for preliminary injunction claims on grounds that said requirements unconstitutionally infringed upon its freedom of association, and that requiring the submission of an unredacted Schedule B was preempted by federal law in any event. That motion was denied. With respect to the freedom of association claim, the Court reasoned that Plaintiff had not articulated any objective, specific harm that would befall its members as a result of compliance with the Schedule B Requirement, and thus had failed to make a prima facie showing of infringement concerning its associational rights. Center for Competitive Politics v. Harris, No. 2:14-cv-00636-MCE-DAD, 2014 WL 2002244 at *6 (E.D. Cal. May 14, 2014). The Court further opined that the requirement was valid in any event because it substantially related to the Attorney General's compelling interest in performing her regulatory and oversight functions. Id. at *7.

Plaintiff appealed this Court's denial of its preliminary injunction request and the Ninth Circuit affirmed, determining, in relevant part, that the requirement to disclose unredacted Schedule B information to the Attorney General posed no actual burden on Plaintiff's First Amendment rights and was facially constitutional. CCP, 784 F.3d at 1317. In assessing the burden on Plaintiff's First Amendment rights as a result of the disclosure requirements, the appellate panel made it clear that compelled disclosure alone does not constitute a First Amendment injury. See id. at 1314. Rather to prevail on a First Amendment challenge to compelled disclosure of its donor information, the court found Plaintiff had to produce "evidence to suggest that their significant donors would experience threats, harassment, or other potentially chilling conduct as a result of the Attorney General's disclosure requirements." Id. at 1316. Plaintiff did not attempt, and thus failed to make, any such showing. Id.

Given the absence of any actual burden on Plaintiff's First Amendment rights, the Ninth Circuit then weighed the Attorney General's "compelling interest in enforcing the laws of California," which included having "immediate access to form 990 Schedule B"

filings. Id. at 1316. The panel recognized that immediate access to Schedule B filings "increases her investigative efficiency" by allowing her to "flag suspicious activity" by reviewing significant donor information. The court thus concluded that requiring the disclosure of Schedule Bs "bears a 'substantial relation'" to a "'sufficiently important' government interest", therefore satisfying examination under exacting scrutiny. Id.

Following the Ninth Circuit's denial of its interlocutory appeal, Plaintiff filed a petition for writ of certiorari, which was denied by the United States Supreme Court on November 9, 2015. Plaintiff then filed its FAC on August 12, 2016. ECF No. 37. The FAC continues to allege that the Attorney General's unredacted Schedule B requirement violates Plaintiff's First Amendment rights to free association and speech and is preempted by federal law. Plaintiff further argues that its Fourth Amendment right to be free from unreasonable search and seizure is also being violated. Plaintiff allegedly has chosen to cease fundraising in California rather than comply with the requirement that it file a complete copy of its Schedule B with the Registry. FAC, ¶ 51.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and

quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

As the Ninth Circuit recognized in CCP, Plaintiff's challenge to the Attorney General's Schedule B filing requirement is made on facial grounds. CCP, 784 F.3d at 1314, n.5. This is because Plaintiff's claim is not limited to its particular case, but instead challenges application of the Attorney General's requirement to all Registry submissions. Since the relief as requested by Plaintiff would necessarily reach beyond Plaintiff's particular circumstances, Plaintiff's claim must satisfy the standards of a facial challenge. John Doe. No. 1 v. Reed, 561 U.S. 186, 194; citing United States v. Stevens, 359 U.S. 460, 472-73 (2010). In order to invalidate a law as facially overbroad, at the very least Plaintiff must show that "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Stevens, 559 U.S. at 473. The Court will thus analyze Plaintiff's claims here under those criteria.

### A. Absence of Injury Forecloses Plaintiff's First Amendment Associational Rights Claim

First Amendment challenges to disclosure requirements are evaluated under "exacting scrutiny." See John Doe No. 1 v. Reed, 561 U.S. at 196; CCP, 784 F.3d at 1314-15. In making this analysis, the Court must "first ask whether the challenged regulation burdens First Amendment rights. If it does, [it] then assesses whether there is a 'substantial relation' between the burden imposed by the regulation and a 'sufficiently important' governmental interest." Protectmarriage.com-- Yes on 8 v. Bowen, 752 F.3d

827, 832 (9th Cir. 2014). Compelled disclosure like that challenged here does not alone constitute First Amendment injury. Instead, the court must balance the "actual burden" posed by such a requirement on a plaintiff's First Amendment rights. CCP, 784 F.3d at 1315, citing John Doe No. 1 v. Reed, 561 U.S. at 196. Where there has been no factual showing of injury, a regulation generally passes muster under the exacting scrutiny standard. Buckley v. Valeo, 424 U.S. 1, 69-71 (1976).

Applying this analysis to the present matter, the Ninth Circuit has already noted that Plaintiff "does not claim and produces no evidence to suggest that their significant donors would experience threats, harassment or other potential chilling conduct as a result of the Attorney's General's disclosure requirement," and thus has failed to demonstrate any "actual burden" on its freedom of association cognizable as a First Amendment injury. CCP, 784 F.3d at 1314, 1316. CCP made this finding in the face of Plaintiff's arguments that "the Attorney General's systems for preserving are not secure, and that its significant donors' names might be inadvertently accessed or released." Id. at 1316 (emphasis added). The Ninth Circuit rejected that argument, however, describing it as "speculative" and not constituting "evidence that would support CCP's claim that disclosing its donor to the Attorney General for her confidential use would chill its donors' participation." Id., citing United States v. Harriss, 347 U.S. 612, 626 (1954). Consequently, given the lack of cognizable injury and the Attorney General's "compelling interest" in enforcing California laws pertaining to charitable contributions, CCP found that the Attorney General's Schedule B disclosure requirement was facially constitutional. Moreover, another Ninth Circuit panel which reviewed a preliminary injunction ruling on the very same issue some six months later reached the same conclusion, stating that it was "bound by our holding in [CCP] that the Attorney General's nonpublic Schedule B disclosure regime is facially constitutional." Americans for Prosperity Foundation v. Harris, 809 F.3d 536, 538 (9th Cir. 2015)

///

Plaintiff urges this Court not to accept the Ninth Circuit's analyses in this regard

8

since they were made in the context of preliminary injunction decisions that may have been made "hastily on less than a full record" and consequently may "provide little guidance as to the appropriate disposition on the merits." Rodriguez v. Robbins, 804 F.3d 1060, 1080 (9th Cir. 2015). Plaintiff therefore contends that "this Court is not bound by the Court of Appeals' decision to give the Attorney General the benefit of the doubt" in finding that the regulation satisfied exacting scrutiny. See Pl.'s Opp., 6:3-4.

Plaintiff's argument in this regard is misplaced since Plaintiff amended its complaint in the face of the Ninth Circuit's admonition as to the shortcomings of their claims, yet the FAC still fails to identify any cognizable burden on Plaintiff's freedom of association. Indeed, the FAC still falls short of the mark in that there are no allegations that the Attorney General's demand for and collection of Schedule B forms for nonpublic use has caused any threat, harm, or negative consequences to Plaintiff or its members. To the contrary, as Defendant point outs, "the singular effect of the Schedule B requirement on [P]laintiff appears to be that it has chosen not to fundraise in California rather than comply with state law." Def.'s Mot, 11:1-3, citing FAC, ¶ 51.

This argument is insufficient to satisfy the requirement that an actual injury be shown. Plaintiff's voluntary decision to forego the privilege of soliciting funds as a tax-exempt entity, rather than comply with a law it deems unconstitutional, is not a cognizable First Amendment harm. See Citizens United v. Schneiderman, 203 F. Supp. 3d 397, 407 (S.D.N.Y. 2016) ("[T]he desire for privacy and loss of donations alone does not render viable an as-applied challenge to a disclosure regime." (citing Buckley, 424 U.S. at 71-72)); see also Caplan v. Fellheimer Eichen Braverman & Kaskey, 68 F.3d 828, 839 (3rd Cir. 1995) ("Because defendants have acted to permit the outcome that they deem unacceptable, we must conclude that such an outcome is not an irreparable injury. If the harm complained of its self-inflicted, it does not qualify as irreparable.").

///

Although compelled disclosures have been upheld as interfering with an entity's

associational rights on an as-applied basis, and while the Ninth Circuit recognized in CCP that such disclosures could succeed if such disclosure of a contributors' names would subject the entity "to threats, harassment, or reprisals from either Governmental officials or private parties" (CCP, 784 F.3d at 1315, citing Buckley v. Valeo, 424 U.S. at 74), no such showing has been made here.  As indicated above, the FAC still contains no allegation suggesting that the Attorney General's demand for and collection of Schedule B forms has caused any such consequences.  Therefore, Plaintiff cannot analogize its position to as-applied challenges involving plaintiffs, generally minority groups, who were "unpopular, vilified and historically rejected by the government and the citizenry" like the NAACP in the pre-Civil Rights Era and the Socialist Party during the Cold War.  Brown v. Socialist Workers '74 Campaign, 459 U.S. 87, 88 (1982); NAACP v. Alabama, 357 U.S. 449, 462-63 (1958); see also John Doe No. 1 v. Reed, 823 F. Supp. 2d 1195, 1201 (W.D. Wash. 2011) (noting that as-applied exemption from disclosure requirements "have been upheld in only a few cases").  As indicated above, groups so qualifying were generally subjected to both government-sponsored hostility and brutal, pervasive private violence both generally and as a result of disclosure (see, e.g., Brown, 459 U.S. at 89-99; Bates v. Little Rock, 361 U.S. 516, 525 (1960); NAACP, 357 U.S. at 462-63) such that they could not seek adequate relief from either law enforcement or the legal system.  See Protectmarriage.com v. Bowen, 599 F. Supp. 2d 1197, 1217-18 (E.D. Cal. 2009).  Plaintiff's FAC does not even remotely demonstrate that Plaintiff falls into this limited exception, despite being advised by the Ninth Circuit's CCP decision of the requirements for doing so.  CCP, 784 F.3d at 1315.

The only thing Plaintiff does try to do is to allege that the Attorney General's professed policy of non-disclosure is less than foolproof.  To support that argument, Plaintiff points to a decision rendered by the Central District following a bench trial in Americans for Prosperity Foundation v. Harris ("AFPF"), No. CV 14-9448-R, 2016 WL 1610591 (C.D. Cal. April 21, 2016).  In that case, plaintiff AFPF argued that the Attorney General's Schedule B disclosure requirement was unconstitutional on an as-applied

basis, and the Court's decision was "focuse[d] solely" on that as-applied challenge.

The as-applied nature of the challenge in AFPF alone distinguishes that case from the matter at bar. Indeed, after recognizing that plaintiff's challenge in AFPF was brought on an as-applied basis, the court further observed that "the Ninth Circuit in [CCP] foreclosed any facial challenge to the Schedule B requirement." Id. at * 4. Moreover, unlike the present case, the AFPF decision indicates that "[d]uring the course of trial, the Court heard ample evidence establishing that AFPF, its employees, supporters and donors face public threats, harassment, intimidation, and retaliation once their support for and affiliation with the organization becomes publicly known." Id. The court went on to cite specific instances in that regard. Accordingly, the AFPF court found that AFPF supporters were "subjected to abuses that warrant relief on an as-applied challenge." Id. Significantly, no such abuses have been identified in the present case.

In the face of the actual burden on associational rights identified in AFPF, the Court went on to examine the strength of the Attorney General's legitimate interest in the disclosure. It found that the record before it lacked "even a single, concrete instance in which pre-investigation collection of a Schedule B did anything to advance the Attorney General's investigative, regulatory or enforcement efforts." Id. at *3. Consequently, "in light of the requirement's burdens on AFPF's First Amendment rights," it found that the Attorney General's interests did not justify those burdens. Id.

Here, the absence of any articulated burden, even in the wake of the Ninth Circuit's CCP decision and Plaintiff's subsequent opportunity to file its FAC, makes the balancing engaged in by AFPF unnecessary. In the present case, we have, in the face of no identified First Amendment burden, the Attorney General's argument that disclosing the names of significant donors "is necessary to determine whether a charity is actually engaged in a charitable purpose, or is instead violating California law by engaging in self-dealing, improper loans, or other unfair business practices." CCP,

///

784 F.3d at 1311. Under the circumstances of the present matter that representation is

11

sufficient to survive exacting scrutiny.

Additionally, plaintiff's argument in AFPF for the proposition that the Attorney General's office has been unable to keep confidential Schedule Bs private makes no difference to this analysis. Preliminarily, as a Central District decision, AFPF's findings are not binding on this Court in the first place. Secondly, given the amendment of California Code of Regulations § 310, effective July 8, 2016 (at a point after the AFPF decision was rendered on April 21, 2016), the Attorney General now is legally required by law as well as by practice to maintain the confidentiality of donor information contained in submitted schedules. The fact that confidentiality is now guaranteed by formal regulation weighs in favor of the reasonableness of the Attorney General's disclosure requirement.

Having determined that Plaintiff has not stated a cognizable First Amendment freedom of association claim, the Court now addresses the second prong of Plaintiff's First Amendment challenge; namely, its argument that the Attorney General's Schedule B requirement impinges upon free speech.

**B.     Plaintiff's First Amendment Free Speech Claim Also Fails**

In addition to alleging the associational claims rejected above, Count I of the FAC also contends that the requirement to file a Schedule B "as a predicate to Plaintiff's ability to lawfully speak about a topic or subject matter—namely charitable solicitation" violates its First Amendment right to free speech. FAC, ¶ 80. The FAC further claims, without supporting facts or elaboration, that the Schedule B requirement operates as a content-based restriction on charitable solicitation, "which is itself a form of First Amendment speech." Id. at ¶¶ 58-62.

To begin with, the FAC fails to identify any speech that is impacted by the reporting requirement. See Citizens United v. Federal Election Comm'n,, 558 U.S. 310, 367 (2010) (setting forth proof to establish threshold case of harm to speech rights from disclosure). At most, as already enumerated above, the FAC simply suggests that because Plaintiff has itself elected to not comply with Schedule B's requirement and

purports to have accordingly stopped fundraising in California on that basis, its speech has been impaired.

The Court agrees with Defendant that Plaintiff's argument in this respect fails as a matter of law. Although solicitation of charitable contributions is protected speech (see Riley v. Nat'l Federation of the Blind of North Carolina, Inc., 487 U.S. 781, 789 (1988)), there is no support for the claim that any regulation that arguably affects the ability or willingness to secure or donate funds is constitutionally invalid. To the contrary, charitable solicitation is entitled to First Amendment protection not because it contemplates the right to raise money, but instead because the act of soliciting funds is "characteristically intertwined with informative and perhaps persuasive speech." Village of Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 632 (1980); see also Friends of the Vietnam Veterans Memorial v. Kennedy, 116 F.3d 495, 497 (D.C. Cir. 1997) (noting that cases protecting the right to solicit contributions do so not based on a First Amendment right to raise money, but because "the act of solicitation contains a communicative element").

Being required to later report to the government on the outcome of charitable solicitation, on the other hand, does not have the same communicative element and does not impermissibly "burden" speech. See Riley, 487 U.S. at 800 (requiring detailed financial disclosure forms by professional fundraisers does not burden the speaker during the course of a solicitation); ACLU v. Heller, 378 F.3d 979, 992 (9th Cir. 2004) ("[R]equiring a publisher to reveal her identity on her election related communication is considerably more intrusive than simply requiring her to report to a governmental agency for later publication how she spent her money. The former necessarily connects the

///
///
///
///

speaker to a particular message directly, while the latter may simply expose the fact that

the speaker spoke.").[3]

Therefore, as Defendant argues, there is a significant constitutional distinction between requiring the reporting of funds that may be used to finance speech and the direct regulation of speech itself. See, e.g., Buckley v. Am. Con'l Law Foundation, Inc., 525 U.S. 182, 187, 198-99 (1999); Heller, 378 F.3d at 987, 990-92. The former category regularly is upheld, while the latter generally is not. Compare John Doe 1 v. Reed, 561 U.S. at 201-02, and Citizens United, 558 U.S. at 366-71 and Buckley, 424 U.S. at 69-72, with Riley, 487 U.S. at 788-802, and McIntyre v. Ohio Election Comm'n, 514 U.S. at 334, 345-47, 357 (1995). In the present case, charitable organizations are simply required by law to furnish information about their confidential donors to a confidential registry. That requirement places no limitations on protected speech; nor does it compel any speech by fundraisers. Consequently, because no infringement upon speech is present, Plaintiff's First Amendment speech claim also fails as a matter of law and must be dismissed on that basis.

**C. Plaintiff's Fourth Amendment Claim is Without Merit**

In Count II, the FAC goes on to allege that the Attorney General's Schedule B requirement not only violates the First Amendment, it also operates as an unconstitutional search and seizure in contravention of the Fourth Amendment. FAC, ¶ 85. According to the FAC, because the reporting requirement has "the force of a subpoena" and does not permit "precompliance review," it amounts to an unreasonable search and seizure. Id. at ¶¶ 64-68, 85.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . " To establish a viable Fourth Amendment claim, a

---

[3] Despite Plaintiff's argument to the contrary, nothing in the Supreme Court's recent decision in Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015) changes this analysis of disclosure requirements, or suggests they should be subject to strict as opposing to exacting scrutiny. At issue in Reed was a sign code that subjected various signs to different restrictions depending on their content. Because those restrictions depended on the communicative element of the sign, the Supreme Court reasoned that they amounted to "content-based discrimination." Id. at 2224, 2230. The Schedule B disclosure requirement, unlike Reed, is both neutral and generally applicable.

14

plaintiff must show not only that there was a search and seizure as contemplated by the Fourth Amendment, but also that said search and seizure was unreasonable and conducted without consent. See Rakas v. Illinois, 439 U.S. 128, 143 (1978); United States v. Rubio, 727 F.2d 786, 796-97 (9th Cir. 1983). Governmental conduct can constitute a search for Fourth Amendment purposes in two ways. First, a search can occur when "the person invoking [Fourth Amendment] protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." Smith v. Maryland, 442 U.S. 735, 740 (1979). Under this test, the plaintiff bears the burden of showing both a subjective and objectively reasonable expectation of privacy. See United States v. Shryock, 342 F.3d 948, 978 (9th Cir. 2003); Rawlings v. Kentucky, 448 U.S. 98, 104 (1980). Second, a Fourth Amendment search can occur where the government unlawfully occupies private property for the purpose of obtaining information without consent. United States v. Jones, 565 U.S. 400, 404-05 (2012). A "seizure" occurs when there is some "meaningful interference with an individual's possessory interests in . . . property." United States v. Jacobsen, 466 U.S. 109, 113 (1984).

     Aside from bare legal conclusions, the FAC does not demonstrate that the requirement to submit a copy to the Attorney General, for nonpublic use, of the very same Schedule B already on file with the IRS amounts to a search or seizure within the meaning of the Fourth Amendment. Nor is any such conclusion obvious under the circumstances of this case. See id. at 120-124. Indeed, the FAC fails to allege that Plaintiff has any reasonable expectation of privacy that would trigger a search for Fourth Amendment purposes in information contained in Schedule B, to the extent that information is confidentially disclosed to the Attorney General. See Shryock, 342 F.3d at 978.[4] Similarly, with respect to the second alternative for establishing a Fourth Amendment search, the FAC fails to allege, and could not reasonably contend, that the

---

[4] Because the Court concludes that the Schedule B disclosure requirement does not amount to a search, it is unnecessary to determine there was adequate "precompliance review" as to that requirement.

15

Attorney General's demand for Schedule B involves governmental "trespass" and/or "meaningful interference with Plaintiff's property. See Jones, 565 U.S. at 405, 407-09; Jacobsen, 466 U.S. at 120-24.

Even if the FAC did establish these threshold requirements for stating a valid Fourth Amendment claim, which the Court believes it does not, whatever minimal intrusion into Plaintiff's reasonable expectation of privacy the Schedule B requirement might entail is more than outweighed by the Attorney General's interest in enforcing the law and protecting the public from fraud. See United States v. Place, 462 U.S. 696, 703 (1983); see also CCP, 784 F.3d at 1317. Plaintiff's Fourth Amendment claim therefore fails.

**CONCLUSION**

For all the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 44) is GRANTED, in its entirety.[5] Because the Court does not believe that further amendment will rectify the deficiencies of the First Amended Complaint, no further leave to amend will be permitted. The Clerk of Court is directed to close the file.

IT IS SO ORDERED.

Dated: October 30, 2017

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[5] Having determined that Plaintiff's lawsuit fails as a matter of law, Plaintiff's Motion for Preliminary Injunction (ECF No. 39) necessarily also fails and is DENIED as moot.

16